[Civ. No. 42174. Second Dist., Div. Four. June 5, 1974.]

WILLIAM T. RIGSBY, Plaintiff and Appellant, v.
CIVIL SERVICE COMMISSION OF THE COUNTY OF
LOS ANGELES, Defendant and Respondent.

## Counsel

Norman W. de Carteret for Plaintiff and Appellant.

John H. Larson, County Counsel, Daniel C. Cassidy, Chief Deputy County Counsel, and Raymond G. Fortner, Jr., Deputy County Counsel, for Defendant and Respondent.

## Opinion

**JEFFERSON, J.**—Petitioner William T. Rigsby sought a writ of mandate (Code Civ. Proc., § 1094.5) to compel the respondent Civil Service Commission of Los Angeles County to reinstate him as a county employee and pay him accumulated back salary of $2,000. The trial court denied the writ and petitioner has appealed the judgment, which, for reasons hereinafter set forth, we reverse.

The record discloses that petitioner was first employed as a deputy in the sheriff's department on October 28, 1967. Thereafter he attained permanent status. In December 1969, he was assigned to the Malibu station of the sheriff's department. There, and during the course of his previous assignment, he had received citations for his work as a deputy. His immediate superior at Malibu was Deputy Le Roy, a training supervisor.[1]

On December 17, 1969, at Le Roy's invitation, the petitioner accompanied him and two other deputies to Decker Canyon at approximately 2 a.m.; petitioner was off duty at the time. Resting at the bottom of a 300-foot drop in Decker Canyon were a number of vehicles which had, at various times in the past, plunged off the road above the canyon.

---

[1] Le Roy was also discharged by the sheriff's department as the result of the events under discussion here. The record does not disclose what happened to the other deputies involved.

Access to the vehicles was impossible from the road above; the four deputies hiked into the area. The particular object of interest to Le Roy and the others was a Volkswagen automobile which had very recently been involved in an accident which had caused the death of its driver and three passengers.

When the men arrived at the scene of the wreck, petitioner observed the others removing parts from the Volkswagen, knowing that they intended to keep the parts for their own purposes. Petitioner also knew that none of the deputies had obtained prior permission from their superiors in the sheriff's department or from the car's owner to strip the car. Petitioner assisted in the operation by holding a flashlight and, on one occasion, removing a wheel. Petitioner returned to the scene on December 18, 1969, at night while off duty, to assist Le Roy in carrying the car's engine out of the canyon. Petitioner had no interest in the parts, and acquired none for his own use.

Petitioner's visits to Decker Canyon resulted in his discharge by the sheriff's department on February 16, 1970. At petitioner's request, a hearing officer was appointed by the respondent Civil Service Commission, and an inquiry into his discharge was conducted on July 3, 1970. At the hearing, petitioner was allowed to present written statements from the owner of the Volkswagen and from a representative of the insurance company which had insured the vehicle, dated July 2, 1970, indicating that they regarded the vehicle as a total loss and had no intention of removing it or its parts from Decker Canyon.

The hearing officer affirmed petitioner's discharge on the ground that he had violated policies set forth in the sheriff's department manual, specifically sections 3120.01 and 3120.07.[2]

He made findings of fact and conclusions of law; these were adopted by the commission in upholding petitioner's dismissal on September 10, 1970. Petitioner then sought a review of the administrative decision in the trial court. The trial court affirmed the dismissal, specifically determining that there was substantial evidence to support the finding that petitioner's conduct had discredited the sheriff's department and himself as a deputy sheriff.

---

[2]Sec. 3120.01, "General Behavior: A member shall not act or behave privately or officially in such a manner as to bring discredit upon himself or the Department."

Sec. 3120.07, "Incompetence: Members may be deemed incompetent and subject to suspension, reduction in rank, or dismissal when they display reluctance to properly perform their assigned duties, act in a manner tending to bring discredit to themselves or to the Department, or fail to assume responsibility or exercise diligence, intelligence, and interest in the pursuit of their duties."

At the time of these proceedings, the scope of appellate review of the decision of a local board or agency such as the respondent commission, exercising quasi-judicial powers, was limited to a determination of whether there was substantial evidence to support the decision in the light of the whole record made at the administrative hearing. The prevailing case law indicated that the trial court was not empowered to conduct de novo review. (Code Civ. Proc., § 1094.5, subd. (c); *Le Strange* v. *City of Berkeley,* 210 Cal.App.2d 313, 321 [26 Cal.Rptr. 550]; *Thompson* v. *City of Long Beach,* 41 Cal.2d 235, 239-240 [259 P.2d 649]; *Damiani* v. *Albert,* 48 Cal.2d 15 [306 P.2d 780]; *Keithley* v. *Civil Service Bd.,* 11 Cal.App.3d 443, 448 [89 Cal.Rptr. 809]; *Sunset Amusement Co.* v. *Board of Police Commissioners,* 7 Cal.3d 64 [101 Cal.Rptr. 768, 496 P.2d 840].)

However, after the entry of the judgment in the trial court, and while the case was pending in this court, the Supreme Court reviewed the rule setting forth the standard to be used by a trial court in a case of administrative mandate involving the action of a local agency. In *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 44-45 [112 Cal.Rptr. 805, 520 P.2d 29] the court laid down a new standard in the following terms: "We therefore hold that in all such cases [review of local agencies], if the order or decision of the agency substantially affects a fundamental vested right, the court, in determining under section 1094.5 of the Code of Civil Procedure whether there has been an abuse of discretion because the findings are not supported by the evidence, must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence. If, on the other hand, the order or decision does not substantially affect a fundamental vested right, the trial court's inquiry will be limited to a determination of whether or not the findings are supported by substantial evidence in light of the whole record." In an order modifying the original *Strumsky* opinion, the Supreme Court inserted, immediately after the language above quoted, the following sentence: " 'So that there will be no misunderstanding, we emphasize that this rule shall apply to all pending and future proceedings in trial courts and all pending and future appeals.' " (11 Cal.3d at p. 45.) ▇ Since Rigsby's case involves a vested and fundamental right, it follows that the standard which the trial court should have applied was that of an independent judgment and not that of substantial evidence which its formal findings utilized. We therefore reverse the judgment and remand the case for the making of new findings by the trial court in accordance with the new standard.

We point out that, although *Strumsky* imposes a new standard on trial courts, the standard for this court is the same as in any appeal from a trial court judgment—namely does the record contain substantial evidence to support its (now independently arrived at) findings. We intend no intrusion on the fact finding process of the trial court on its remand. However, we point out that, should that court, employing the new *Strumsky* standard of review, make and enter findings adverse to appellant, the record before it would amply support such findings.

Petitioner himself testified that he knew on the occasions when he accompanied the other deputies to Decker Canyon that none of them had authority to dismantle any automobile there. He also testified that he would have advised members of the general public to obtain authorization from owners of the wrecked vehicles before removing them or their parts; he recognized that a higher standard of conduct is expected of law enforcement officers in this regard, and admitted that in retrospect he had exercised poor judgment in participating in the activities in question.

■ He contends on this appeal that we should reverse the trial court's judgment affirming his dismissal upon the ground that the administrative hearing officer (and the trial court) improperly refused to make a finding that the Volkswagen was abandoned property on December 17 and 18, 1969. Petitioner argues that such a finding was material; that if the vehicle was in fact abandoned, his conduct with respect to it was free of wrongdoing, and could not form the basis for discharge. It is clear from the record that no such finding could have been supported by the evidence adduced at the hearing. The statements of the legal owner and the insurance company involved related to their intention not to reclaim the vehicle as of July 1970, rather than as of December 1969. In any event, the administrative determination affirming discharge was not based upon the actual status of the vehicle at the time it was stripped but upon the fact that petitioner, as he himself admitted, did not know and had made no effort to ascertain the status of the vehicle before participating in the removal of its parts. Thus, the actual status of the vehicle was not material. The petitioner's lack of knowledge of its status, in our view, was sufficient to support the administrative action taken.

■ Petitioner also contends that there was no evidence that his activities brought discredit on himself or the sheriff's department. Discredit may be inferred in a situation where a law enforcement officer fails to use judgment in dealing with property whose ownership is unknown to him. In the instant case, there was the additional factor that the

vehicle in question had been involved in an accident resulting in fatalities to four persons, a very short time ago. The deputies' conduct might have seriously hampered investigation and the discovery of physical evidence relating to the accident.

Petitioner's further contention that actual as opposed to potential discredit must be shown to warrant discharge is without merit; publicity is not a prerequisite to discharge. (*Orlandi* v. *State Personnel Bd.*, 263 Cal.App.2d 32 [69 Cal.Rptr. 177]. Potential discredit may be considered regardless of the employee's motivation. (*Nightingale* v. *State Personnel Board*, 7 Cal.3d 507 [102 Cal.Rptr. 758, 498 P.2d 1006].) Finally, petitioner seems to suggest that, in order to justify a discharge based upon discredit, a showing must be made that the conduct in question had a direct relationship to the discharged employee's duties and that no such showing was made here. (See *Morrison* v. *State Board of Education*, 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375].) We disagree. The conduct of a law enforcement officer with respect to property surely has a bearing on his official duties, whether or not he actually participated in a crime.

The propriety of the penalty imposed by the sheriff's department, affirmed by the administrative agency, was a matter resting within their sound discretion, and the decision to discharge may not be disturbed unless there has been an abuse of discretion. (*Blake* v. *State Personnel Board*, 25 Cal.App.3d 541 [102 Cal.Rptr. 50].)

The judgment is reversed; the case is remanded with directions to vacate the findings heretofore made and entered and to make new findings applying the standard of review set forth in *Strumsky*. Neither party shall recover costs in this court.

Files, P. J., and Kingsley, J., concurred.

The petitions for a rehearing were denied June 21, 1974, and the petitions of the appellant and the respondent for a hearing by the Supreme Court were denied August 7, 1974. McComb, J., Burke, J., and Clark, J., were of the opinion that the petitions should be granted.