[Civ. No. 14050. Fourth Dist., Div. One. May 12, 1975.]

KLITGAARD & JONES, INC., et al., Plaintiffs and Appellants, v. SAN DIEGO COAST REGIONAL COMMISSION et al., Defendants and Respondents.

**COUNSEL**

Kiltgaard & Jones and Darvy Mack Cohan for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, and Anthony M. Summers, Deputy Attorney General, for Defendants and Respondents.

OPINION

WHELAN, J.*—Klitgaard & Jones, Inc. and others doing business as Carlsbad Beach Club, a partnership (Club) have appealed from a judgment of the Superior Court of San Diego County, which denied their petition for a writ of mandate to the San Diego Coast Regional Commission (Regional Commission) and the California Coastal Zone Conservation Commission (State Commission).

Club is the owner of an unimproved lot which adjoins a public beach along the Pacific Ocean in the city of Carlsbad. The lot has a frontage of 175 feet along the coast. Upon the lot Club desires to place a four-story building with an unbroken frontage of 155 feet. This building would contain 16 apartment or condominium units. The property was acquired prior to the enactment of the California Coastal Zone Conservation Act of 1972 (Pub. Resources Code, div. 18, §§ 27000-27650), hereinafter referred to as the "Act."

Club made application to the Regional Commission for a development permit under the Coastal Act. On May 4, 1973, the Regional Commission voted to issue the permit, rejecting the recommendation for denial made by the staff. An appeal was taken to the State Commission on May 11, 1973, by Donald Dwight Worden.

Hearing on the appeal was scheduled for June 6, 1973, but Club requested the hearing be continued to June 20, 1973. Club also requested that the hearing thereafter scheduled for June 20, 1973 be continued to July 5, 1973. Both those requests were granted, and the public hearing was held on July 5, 1973. On July 18 the State Commission voted to deny Club's application for a permit.

On July 31, 1973, Club filed a petition for writ of mandate in the San Diego County Superior Court, seeking review of the State Commission's decision and a peremptory writ of mandate.

The State and Regional Commissions answered the petition and also demurred. Ultimately, the trial court examined the record of administrative proceedings, overruled the demurrer, denied the motion for a peremptory writ, and entered judgment denying the peremptory writ.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

The grounds alleged in the petition for writ of mandate were these: that the State Commission was without jurisdiction to hear the appeal because Worden had no standing to appeal and no substantial issues were raised on the appeal; that there was no evidence before the State Commission to support its finding that the proposed improvement was not consistent with the finding and declarations set forth in section 27001 and with the objectives set forth in section 27302.[1]

Club, on October 16, 1973, filed an amendment to its petition alleging that because the State Commission had not ruled on the appeal within 60 days after it was filed, the State Commission was without authority to reverse the action of the Regional Commission, and the decision of the Regional Commission became final upon the expiration of 60 days without decision by the State Commission.

To that the Commissions replied that the issue had not been presented to the State Commission; Club had not exhausted its administrative remedies and was estopped by its own conduct from asserting that the delay beyond the 60-day period resulted in an automatic affirmance of the Regional Commission's decision.

The court ruled on the matter on November 9, 1973.

Prior to May 30, 1973, the State Commission set the appeal for a hearing on June 6, 1973. On May 30, Club's counsel wrote to the State Commission, stating in part:

"Gentlemen: The hearing on the referenced appeal is presently set for June 6, 1973, in Monterey, California. In order to give us time to discuss our project with your staff in detail, *we request that the public hearing on the appeal be continued to June 20, 1973* in Los Angeles. *It is understood that this will mean extending the sixty-day period by fourteen days.*" [Italics added.]

In compliance with that request, the State Commission reset the hearing for June 20.

On June 18, counsel for Club, who was also president of one of the corporate partners, wrote again to the State Commission requesting a further continuance to July 5 of the hearing that had been set for June

---

[1]Unless otherwise stated, all statutory references are to the California Coastal Zone Conservation Act of 1972 (Pub. Resources Code, div. 18, §§ 27000-27650).

20, stating: "This will extend the sixty day appeal period beyond that requested on May 30, 1973, by a like period."

The trial court found that the hearing had been set for June 6 and continued, in the circumstances related above, and that if the periods of continuance requested by Club were deducted from the over-all period between filing of the appeal and decision, the net period was less than 60 days.

The following findings were also made:

"DONALD DWIGHT WORDEN, the party initiating the appeal herein, has no direct proprietary, pecuniary or other interest in the realty involved in these proceedings, other than that general interest common to all citizens of the State of California. Nevertheless, he is an 'aggrieved person' within the meaning of the California Coastal Zone Conservation Act of 1972.

". . . . . . . . . . . . . . . . . . . .

"There is substantial evidence in light of the whole record to sustain the vote of the California Coastal Zone Conservation Commission denying a coastal zone development permit to petitioner."

The trial court concluded Club was estopped to assert loss of jurisdiction by the State Commission, and that Worden had standing to appeal the decision of the Regional Commission.

In this appeal Club contends Worden had no standing to appeal from the granting by the Regional Commission of Club's application for a permit; and that Club could not be estopped to assert the State Commission's lack of jurisdiction to rule upon the appeal more than 60 days after the filing of the appeal.

Under date of May 23, 1973, Worden, signing himself as a member of "San Diego Coastwatch Committee," presented an extensive written statement and argument in support of the administrative appeal.

Club submitted to the State Commission, on June 13, 1973, a written argument which raised, among others, the issue of Worden's standing to appeal, stating: "Regardless of how broad a definition is given to 'aggrieved,' the fact is that nowhere does the appellant state or refer to

himself as an aggrieved person, so, therefore, he has not chosen to bring himself within the class of persons who can appeal from the granting of a permit."

At the meeting of the State Commission on July 5, oral argument was presented by counsel for Club. Worden was present at the meeting, was identified as "representing the San Diego Coastwatchers," and made statements concerning some of the physical aspects relating to the proposed project.

At the same meeting, Worden appeared as appellant in another appeal from a decision of the Regional Commission.

The Act became law as the result of an initiative measure in the general election of November 1972.

The Act declares, in section 27001: "The people of the State of California hereby find and declare that the California coastal zone is a distinct and valuable natural resource belonging to all the people and existing as a delicately balanced ecosystem; that the permanent protection of the remaining natural and scenic resources of the coastal zone is a paramount concern to present and future residents of the state and nation; that in order to promote the public safety, health, and welfare, and to protect public and private property, wildlife, marine fisheries, and other ocean resources, and the natural environment, it is necessary to preserve the ecological balance of the coastal zone and prevent its further deterioration and destruction; that it is the policy of the state to preserve, protect, and, where possible, to restore the resources of the coastal zone for the enjoyment of the current and succeeding generations . . . ."

The State Supreme Court said, in *State of California* v. *Superior Court,* 12 Cal.3d 237, 253 [115 Cal.Rptr. 497, 524 P.2d 1281]: "[I]n order to protect this valuable resource it is necessary to study the coastal zone, prepare a comprehensive plan for its orderly, long-range conservation and management, and insure that any development which occurs in the permit area during the study and planning period will be consistent with the objectives of the Act. [Citation.] The Commission is enjoined to submit such a plan to the Legislature by December 1, 1975. [Citation.] Among the objectives of the coastal zone plan are the avoidance of irreversible and irretrievable commitments of coastal zone resources. [Citation.] In order to assure that the purposes of the Act are not

impaired during the period in which the plan is in the process of formulation, those who seek to perform any development within the permit area are, with certain exceptions, required to seek a permit from the Commission. [Citation.] However, the Act, including the permit requirement, is automatically repealed by its own terms on the 91st day after the final adjournment of the 1976 Regular Session of the Legislature. [Citation.]

"Thus, the requirement for a permit is an interim measure to assure that developments in the coastal zone are consistent with the objectives of the Act so that priceless coastal resources are not irreversibly committed to uses which would be inconsistent with the plan ultimately developed."

Preliminary action upon the request for a permit is placed with the Regional Commission, within whose geographical area of jurisdiction the affected property is situated (§§ 27104, 27400). A public hearing must be held upon any such application (§ 27420).

Section 27423 declares: "(a) An applicant, or any person aggrieved by approval of a permit by the regional commission, may appeal to the commission.

"(b) The commission may affirm, reverse, or modify the decision of the regional commission. If the commission fails to act within 60 days after notice of appeal has been filed, the regional commission's decision shall become final.

"(c) The commission may decline to hear appeals that it determines raise no substantial issues. Appeals it hears shall be scheduled for a de novo public hearing and shall be decided in the same manner and by the same vote as provided for decisions by the regional commissions."

Provision is made for judicial review (§ 27424).

The Act empowers the Commission to adopt any regulations or take any action it deems reasonable and necessary to carry out its provisions (§ 27240, subd. (d); *State of California* v. *Superior Court, supra,* 12 Cal.3d 237, 250).

A comprehensive code of regulations has been adopted. (Cal. Admin. Code, tit. 14, div. 5.5, commencing with § 13001.)

The regulations include the following:

"At the meeting next succeeding the filing of an appeal with the Commission, or as soon thereafter as practicable, the staff shall make a recommendation to the Commission as to whether or not the appeal raises a substantial issue. Following such recommendation, the Commission shall make a determination as to whether or not the appeal raises a substantial issue." (§ 13930.)

" . . . The scheduling and determination of appeals shall be such as to allow final action within sixty (60) days of the date an appeal is filed, unless a request for an extension of the 60-day period is made and granted. . . ." (§ 13931.)

The State Commission may decline to hear appeals that it determines raise no substantial issue (§ 27423, subd. (c); Cal.Admin. Code, tit. 14, § 13920).

If the State Commission declines to hear an appeal, the action of the Regional Commission shall become final forthwith. (Cal. Admin. Code, tit. 14, § 13934.)

Section 27420, subdivision (c) of the Act declared the Regional Commission's decision should become final after the tenth working day unless an appeal had been taken. Regulations adopted December 7, 1974, fixed a limit of 10 working days for taking an appeal (Cal. Admin. Code, tit. 14, §§ 13900, 13901, 13902). Another regulation, adopted December 7, 1974, and, therefore, after the date of the judgment appealed from, defined when a person is "aggrieved" with regard to the right of appeal, as follows:

"A person is 'aggrieved' within the meaning of Public Resources Code, Section 27423(a), only if he or she is dissatisfied with a determination of a Regional Commission, *and* he and his or she and her representative opposed the application on which the Regional Commission determination was made in person at the public hearing or by letter or other appropriate means suitable to inform the Commission of the nature of the opposition, or would have opposed the application but for good cause were unable to do so. Such a person need not be a resident of the county in which the development is proposed." (§ 13903.)

The Regional Commission has original jurisdiction to pass upon applications for permits. But the appeal provided by the Act, if the State Commission decides it presents a substantial issue, involves a redetermination by the State Commission of the merits of the application. Its decision might very well take into account state-wide policies, while the purview of the Regional Commission, in its consideration of the matter, might be narrower.

At the same time, the permit procedures are not adversary in nature. There are provisions in the regulations for special notice to owners of real property within 100 feet of a project, but the regulations contemplate that notice may be given to anyone with a particular interest, and at the actual hearing anyone may express views upon the merits of the application.

Although some might claim the strange, new world of legal protection for the physical environment and ecological balance affords an easement in gross to any member of the general public for light, air and view, such rights do not inhere in private individuals but in the public.

Under the Act in question, it is the duty of the State Commission to adopt a plan that shall be consistent with all the following objectives:

"(a) The maintenance, restoration, and enhancement of the overall quality of the coastal zone environment, including, but not limited to, its amenities and aesthetic values.

"(b) The continued existence of optimum populations of all species of living organisms.

"(c) The orderly, balanced utilization and preservation, consistent with sound conservation principles, of all living and nonliving coastal zone resources.

"(d) Avoidance of irreversible and irretrievable commitments of coastal zone resources." (§ 27302.)

The permit procedure is to assure that the purposes of the Act are not impaired during the period in which the plan is in process of formulation. (*State of California* v. *Superior Court, supra,* 12 Cal.3d 237, 253.)

Nevertheless, nothing in the Act or the regulations requires the Regional Commission to inform the State Commission of the decisions of the Regional Commission, or of the pendency of an application for a permit; nor is there any express declaration of a right by the State Commission on its own motion to review a decision of the Regional Commission. Only when it receives notice of an appeal from its decision is the Regional Commission required to forward its file in the matter to the State Commission. (Cal. Admin. Code, tit. 14, § 13933.)

Respondent argues that the protective intent behind the Act requires that the term "person aggrieved" be interpreted as any person who chooses to feel aggrieved. This would give broad scope to the activities of eager beavers, busybodies and intermeddlers, but there might be no other way to further the objective sought to be obtained by the Act.

It cannot be denied that the Act's intent encompasses a liberal concept of standing. Review by the State Commission is usually in furtherance of the overall plan, and thus there must be some self-proclaimed *ami du peuple* to take up the cudgels. The winnowing of patently unmeritorious appeals is provided for in section 27423, subdivision (c).

Sections 27425 and 27426 allow "any person to maintain an action . . . to restrain violation of [the Act]"; and "to maintain an action for the recovery of civil penalties provided in [the Act]." These unrestricted standing features show the desire for proper enforcement of the Act. However, sections 27423 and 27424, dealing with appeals to the State Commission from Regional Commission approval of a permit, and judicial review of decisions or actions of the State or Regional Commission, require that "any person" be "aggrieved." This clear and intentional placement of a qualification upon the status of the person seeking to challenge the Regional Commission's action cannot be disregarded.

Since the appeal to the State Commission in the case at bench was taken and determined, that Commission adopted the regulation we have quoted (§ 13903) limiting the definition of "person aggrieved" to one who opposed the application before the Regional Commission or would have done so but for good cause was unable to do so.

The record of the hearing before the Regional Commission does not show any such opposition by Worden, and the record of the State

Commission does not show any cause why he had not made such opposition.

It is clear, however, that the State Commission, which later adopted the regulation, entertained Worden's appeal as though under its then interpretation of "person aggrieved" Worden qualified as such.

■ We are not prepared to ignore the word "aggrieved" so as to make it surplusage; nor will we give it so narrow an interpretation as to do harm to the purpose of the Act. With these factors in mind, we have determined that to be "aggrieved," a "person" must, at the time of the hearing, be either (1) a resident of California, (2) a citizen of California, or (3) have a pecuniary or proprietary interest in the outcome of a permit hearing. Such a construction accommodates the need for a broad standing rule, while doing no violence to the express statutory language.

The administrative record shows that Worden was a resident of California. We therefore conclude that Worden, at the time, qualified as an aggrieved person. Such status need not be asserted by the appellant, but rather the permit seeker must raise the lack of standing.

■ Club argues that upon the expiration of 60 days from the filing of the appeal, the State Commission had no jurisdiction to act in the matter; that the jurisdiction to grant or deny the permit could not be conferred by acquiescence or stipulation, and its lack could not be the subject of waiver. It is clear, of course, that no conduct of Club after the expiration of the 60-day period could have revived a power that had expired by reason of nonexercise.

■ The evident purpose of section 27423, subdivision (b) is to eliminate as far as possible the effect of bureaucratic delay upon the rights of owners of real property in the use of such property. It is equally clear that the time limitation is for the benefit of the landowner-applicant.

The code section may be ambiguous as to whether the Regional Commission's decision shall become final only in the event of total inaction by the State Commission in the matter of the appeal. A necessity for objective evidence of finality compels us to hold that the State Commission must affirm, reverse or modify within the 60-day period.

■  The question here is whether conduct of Club, at a time within the 60-day period when the State Commission could have acted and was prepared to act, may estop Club from asserting a lack of jurisdiction and the finality of the Regional Commission's decision, as the trial court found.

The public hearing on Club's application was held before the State Commission on July 5. Its decision was made on July 18. The hearing had been set originally for June 6. It may be assumed the decision would have followed by the same interval had the hearing been held on June 6.

June 20 was then set for the hearing. Again, if the hearing had been had on that date, it might be assumed decision would have followed within 14 days, which would have been not later than July 4. The period of 60 days from the filing of the appeal expired on July 10.

The applicable principles are declared in *In re Griffin,* 67 Cal.2d 343 [62 Cal.Rptr. 1, 431 P.2d 625]. There a probationer, facing the court with regard to claimed violations of probation, and knowing that the probationary term was shortly to expire, requested a continuance of the revocation hearing beyond the expiration date, without informing the court or his counsel, both of whom were ignorant of the impending expiration of the probationary term. The court having granted the requested continuance, it was held the probationer was estopped to assert the termination of the court's jurisdiction to revoke probation.

The rule that jurisdiction cannot be conferred by estoppel applies to subject matter jurisdiction, that is, the court's power to hear and determine the type of cause in question.

In *Griffin,* the court stated, at pages 347-348: "The jurisdictional concept involved in the cases holding that the court is without power to revoke probation. after the end of the probationary term is not lack of jurisdiction of the cause but excess of jurisdiction. . . .

"[Where] the court has jurisdiction of the subject, a party who seeks or consents to action beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction. . . . Whether he shall be estopped depends on the importance of the irregularity not only to the parties but to the functioning of the courts and in some instances on other considerations of public policy. A litigant who has stipulated to a procedure in excess of

jurisdiction may be estopped to question it when 'To hold otherwise would permit the parties to trifle with the courts.' [Citation.] On the other hand waiver of procedural requirements may not be permitted when the allowance of a deviation would lead to confusion in the processing of other cases by other litigants. [Citation.] Substantive rules based on public policy sometimes control the allowance or disallowance of estoppel."

In *Griffin*, the court concluded that no policy, substantive or procedural, precluded estoppel of the probationer to attack the excess of jurisdiction that resulted from the granting of his motion for a continuance.

No overriding public policy has been suggested, and none is apparent, that would exclude an estoppel to assert the failure of the State Commission to exercise jurisdiction within a statutory time limit that has been established for the benefit of the person sought to be estopped.

The statute under consideration here has the distinguishing feature that a certain result, that is, the finality of the Regional Commission's decision, shall follow the State Commission's nonaction for a period of 60 days. While the statute may be unique in its language, non-compliance with other statutes is also followed by certain results whether or not declared explicitly in the statute. Thus, should the court not revoke probation before the expiration of the probationary period, the probationer attains a probation-free status; if the plaintiff fails to bring his action to trial within five years, the defendant obtains a judgment favorable to himself. The question is whether a party whose conduct gives rise to an estoppel may be estopped not only to assert noncompliance with the statute, but to assert the consequences of such noncompliance. We hold that the estoppel may so extend.

Whether rightly or wrongly, the State Commission has taken the position that the 60-day limit may be extended upon the request of the applicant for whose benefit the time limit was fixed. In good faith, the applicant here requested and obtained such extensions with full knowledge of the language of the statute and upon the express representation that the time limit would thereby be extended. Within the time limitation and the requested extensions, the State Commission acted expeditiously. In those circumstances Club is estopped to assert the

failure of jurisdiction of the State Commission and the finality of the Regional Commission's decision.

The judgment is affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.