Opinion
 

 JEFFERSON (Bernard), J.
 

 Pursuant to Code of Civil Procedure section 1094.5, petitioners Roger Pillsbury, Sterling Robbins and Laura Barton sought a writ of mandate to set aside the issuance to William Presser, real party in interest, of a construction permit in the coastal zone. The respondents were the South Coast Regional Commission and the California Coastal Zone Conservation Commission.
 

 Designated parts of the administrative proceedings were received in evidence in the trial court; additional evidence was also considered. After the presentation of both written and oral argument, the court issued a writ remanding the proceedings and directing that the administrative decisions in favor of issuance of the permit to Presser be set aside because of insufficient “written public notice” of the administrative deliberations. The trial court also directed that, in the event of a new hearing on the Presser permit application, certain delineated procedures for giving adequate “written public notice” of the new hearing were to
 
 *745
 
 be followed. One respondent—the South Coast Regional Commission —has appealed from the judgment, which we modify, and affirm as so modified.
 

 In reviewing the primary issue presented herein—the question of what constitutes “written public notice” of coastal zone hearings involving development in the permit area to persons such as the petitioners—we deem it helpful to set forth some background discussion in order to place the issue in proper perspective.
 

 The Coastal Zone Conservation Act of 1972, effective from February 1, 1973, to January 1, 1977 (hereinafter referred to as the Act of 1972) was adopted as an initiative measure (Proposition 20) by the voters at the November 7, 1972, election. During its existence, it was contained in Public Resources Code section 27000 et seq.
 

 “The Coastal Initiative [found and declared] that the coastal zone is a ‘distinct and valuable natural resource belonging to all the people,’ that it exists as a ‘delicately balanced ecosystem’ and ‘that the permanent protection of the remaining natural and scenic resources of the coastal zone is a paramount concern to present and future residents of the state and nation.’ (§ 27001.)”
 
 [1]
 

 (CEEED
 
 v.
 
 California Coastal Zone Conservation Com.
 
 (1974) 43 Cal.App.3d 306, 321 [118 Cal.Rptr. 315].)
 

 A persistent theme contained in the Act of 1972 was the emphasis on the importance of public participation. “It is clear that it is the intent of the act to allow broad citizen participation in enforcing the provisions of the Coastal Act, and not limit ‘standing’ to those with an actual financial stake in the outcome.”
 
 (Sanders
 
 v.
 
 Pacific Gas & Elec. Co.
 
 (1975) 53 Cal.App.3d 661, 676 [126 Cal.Rptr. 415].)
 

 The Act of 1972 provided that any person planning a development within 1,000 feet inland along the coast from the mean high tide line of the sea would have to apply for a construction permit issuable by one of six regional commissions, whose duty it was to evaluate, after public hearing and discussion, the proposed development in the context of coastline protection. The Act of 1972 contained specific provisions for public notice and hearing. (§ 27420, subd. (b).) Certain administrative regulations pertaining to public notice and hearing were promulgated by
 
 *746
 
 respondent state commission (pursuant to § 27420), and were contained in the California Administrative Code.
 
 [2]
 

 The Act of 1972 was repealed, effective January 1, 1977; it had been conceived as “an interim measure designed to assure that valuable coastal zone resources are not irreversibly committed during the time the [state Commission] is developing a comprehensive plan for the orderly development of the coast, . . .”
 
 (Avco Community Developers, Inc.
 
 v.
 
 South Coast Regional Com.
 
 (1976) 17 Cal.3d 785, 802 [132 Cal.Rptr. 386, 553 P.2d 546].)
 

 The comprehensive plan was brought forth by the Legislature as the California Coastal Act of 1976 (§ 30000 et seq.), referred to hereinafter as the Act of 1976. It incorporated substantial portions of the original initiative measure, and provided further means of coastline control by authorizing local governmental units to exercise such control in conjunction with the regional and state commissions. (§ 30500 et seq.)
 

 The Act of 1976 restates the basic goal of protection of the coastline as a public trust, emphasizing the importance of public participation in the decision-making process, whether it be comprehensive or specific, related to coastal development. (See, e.g., §§ 30339, 30503.) It provides in section 30620 for the preparation of permanent rules relative to construction permit applications, and, in section 30621, it adopts in part the language of former section 27420, subdivision (b), contained in the Act of 1972, by providing that the regional commissions—and the state commission—are to hold a “de novo public hearing on applications for coastal development permits and . .. shall give to
 
 any affected person a written public notice
 
 of the nature of the proceeding and of the time and place of the public hearing.” (Italics added.)
 

 Since neither the Act of 1976 nor the regulations ensuing from it concerning “written public notice” differ substantially from the Act of 1972 or its ensuing regulations, under which this case arose, the primary issue presented here remains relevant now. Hence, we turn to the factual background of the dispute before us.
 

 On November 4, 1974, William Presser filed an application (No. P-11-4-74-4281) with the South Coast Regional Commission, seeking a construction permit for a project to be located in the permit area
 
 *747
 
 contemplated by the Act of 1972 (within 1,000 feet inland from mean high tide).
 

 Presser desired to build a two-story single family residence of approximately 1,800 square feet on a lot located at 212 D’Estates Canal, Venice, California. The particular neighborhood is composed of substantially smaller, older dwellings.
 

 At the time of application, former section 27420, subdivision (b), provided: “The regional commission shall give written public notice of the nature of the proposed development and of the time and place of the public hearing. Such hearing shall be set no less than 21 nor more than 90 days after the date on which the application is filed.”
 

 Hearing on the Presser matter was set for January 6, 1975. Apparently due to an overcrowded calendar, the hearing was continued to a later date; on January 20, 1975, Presser requested that it be taken off the agenda. This was permitted by regulation—section 13321—which further provided for resetting of a hearing by request of the applicant. On June 16, 1975, after such request, hearing was held.
 

 The regulations concerning “written public notice” of hearing, then in effect, were contained in the California Administrative Code. Three basic methods of giving public notice were required pursuant to regulation.
 

 First: “The applicant shall furnish to the Regional Commission one stamped envelope addressed to each property owner of record within one hundred feet from each boundary of the proposed development. Such envelope shall be used by the Regional Commission to notify the addressee of the application for a permit and of the scheduled public hearing. The Executive Director may waive this requirement and may require that some other suitable form of notice be provided by the applicant to those interested persons, upon a showing that this requirement would be unduly burdensome.” (§ 13250, subd. (c).)
 

 Second: “The applicant must post, at a conspicuous place, upon the site of the proposed development, at the time he submits his application for filing, notice that an application for a permit for the proposed development has been submitted to the Regional Commission. Such notice shall contain a general description of the nature of the proposed development. The Regional Commission shall furnish the applicant with
 
 *748
 
 a standardized form to be used for such posting. If the applicant fails to so post the completed notice form and sign the declaration of posting, the Executive Director shall refuse to file the application, or shall withdraw the application from filing if it has already been filed when he learns of such failure.” (§ 13250, subd. (d).)
 

 Finally, notice of hearing “shall be mailed to Commission members, to permit applicants, to parties to proceedings on the agenda, to others known to be interested in specific agenda items, and to organizations and individuals who request such notice in writing. .. . The Regional Commission shall mail the notice and agenda of the Regional Commission hearings to public libraries, building departments and city halls throughout its coastal permit zone area with a request that they be regularly posted on public bulletin boards or other places readily accessible to the public.” (§ 13121.)
 

 The California Administrative Code also contains section 13270, which states that “[a]ll dates for public hearing shall be set with a view toward allowing public dissemination of the information contained in the applicant’s application for a permit prior to the time of the hearing, and toward allowing public participation and attendance at the hearing while affording applicants expeditious consideration of their permit applications.”
 

 At the June hearing on the Presser application, one person appeared in opposition to the permit; a neighbor, petitioner Pillsbury. According to his affidavit, Pillsbury just happened to learn of the hearing by chance; while “recycling” (also known as “trashing,” i.e., looking for abandoned items of value) on the Presser lot he accidentally saw Presser’s posted notice on a fence, obscured by a large bush and a large trash container. Despite his opposition, the regional commission approved the Presser application.
 

 Pillsbury then appealed to the state commission in timely fashion, and hearings were held on the appeal on July 16 and 30, 1975. At the July 30, 1975, hearing, the state commission affirmed the decision of the regional commission. This petition for mandate followed. As indicated, the trial court awarded judgment to the petitioners, and ordered that the Presser permit be set aside.
 

 In its findings of fact and conclusions of law, the trial court determined that petitioners Pillsbury, Robbins and Barton were sufficiently “ag
 
 *749
 
 grieved” by the actions of the respondents to pursue this action against them. It further found that in the Presser matter, the respondents had failed to follow the pertinent regulations, set forth
 
 ante,
 
 concerning the giving of “written public notice.” Finally, the trial court found the regulations themselves insufficient to give adequate “written public notice,” and set forth what it considered to be the “deficiencies which it perceives to be evident in the present regulations.”
 

 On this appeal, the appellant directs its attack on the judgment to that portion which finds the regulations concerning “written public notice” to be invalid. However, we will first briefly comment on some of the other issues resolved by the judgment.
 

 I
 

 Public Resources Code section 27424 provided that “[a]ny person, . .. aggrieved by the decision or action of the commission or regional commission” could maintain an action seeking judicial review by writ of mandamus (§ 27424). The comprehensive code of regulations, adopted pursuant to the Act of 1972, included section 13903, which provided: “A person is ‘aggrieved’ within the meaning of Public Resources Code 27423(a), only if he or she is dissatisfied with a determination of a Regional Commission,
 
 and
 
 he and his or she and her representative opposed the application on which the Regional Commission determination was made in person at the public hearing or by letter or other appropriate means suitable to inform the Commission of the nature of the opposition,
 
 or would have opposed the application but for good cause were unable to do so.
 
 Such a person need not be a resident of the county in which the development is proposed.” (Latter italics added.)
 

 As was stated in
 
 Klitgaard & Jones, Inc.
 
 v.
 
 San Diego Coast Regional Com.
 
 (1975) 48 Cal.App.3d 99, 108 [121 Cal.Rptr. 650], “the regulations contemplate that notice may be given to anyone with a particular interest, . . .”
 
 Klitgaard
 
 goes on to interpret “aggrieved” in very broad terms: “We are not prepared to ignore the word ‘aggrieved’ so as to make it surplusage; nor will we give it so narrow an interpretation as to do harm to the purpose of the Act. With these factors in mind, we have determined that to be ‘aggrieved,’ a ‘person’ must, at the time of the hearing, be either (1) a resident of California, (2) a citizen of California, or (3) have a pecuniary or proprietary interest in the outcome of a permit hearing. Such a construction accommodates the
 
 *750
 
 need for a broad standing rule, while doing no violence to the express statutory language.”
 
 (Id.,
 
 at p. 110.)
 

 Petitioners Pillsbury, Robbins and Barton pursued judicial review in forma pauperis; all were residents of the neighborhood where the Presser construction was to take place. No petitioner was a landowner; all were tenants. The trial court found that they were sufficiently “aggrieved” to contest the issuance of the Presser permit. The Attorney General, representing the respondents below, appeared to concede that petitioner Pillsbury was such a person, but asserted that petitioners Robbins and Barton were not, as they had not participated in the administrative deliberations. The trial court found that there was “good cause” for their absence, due to the fact that neither had received notice of the administrative hearings. It was the function of the trial court to weigh the evidence presented in this regard when it conducted its independent review, and its findings and conclusions, based upon substantial evidence, will not be disturbed here.
 
 (Rigsby
 
 v.
 
 Civil Service Com.
 
 (1974) 39 Cal.App.3d 696, 701 [115 Cal.Rptr. 490].) We note that all three petitioners were “aggrieved” within the broad definition espoused in
 
 Klitgaard.
 

 II
 

 Appellant questions the sufficiency of the evidence to support the trial court’s findings and conclusions that appellant failed to comply with its own regulations concerning the giving of “written public notice” in the Presser matter. This basically factual dispute was aired below in the form of affidavits presented by both sides.
 

 The trial court found that “[n]otice of said hearing was not posted in a conspicuous place on the site of the proposed development, since it was posted on a fence situated at the extreme side of applicant’s property in a position obscured by a large bush and a large trash container.” It was further found that “[t]he applicant [Presser] did not provide the Regional Commission with envelopes addressed to each property owner of record at the time of the filing of the application within 100 feet of the site boundaries. . . . Notice of the hearing was not sent by the Regional Commission to all such property owners", including specifically Elizabeth Belden and Richard Press.”
 

 
 *751
 
 Finally, the trial court determined that “[n]otice was not mailed to all building departments and city halls throughout the coastal permit zone area of the Regional Commission; specifically, notices were not mailed to Building Department in the West Los Angeles Municipal Building nor to the Santa Monica City Hall, the two closest public buildings and offices to the proposed site,” and that “[o]ther than as provided for by regulation, there was no attempt by the Regional Commission to provide for public notice of the pending application or the hearing.”
 

 We affirm the trial court’s determinations in this regard, supported as they are by substantial evidence. (See
 
 Rigsby, supra,
 
 39 Cal.App.3d 696.)
 

 III
 

 Appellant’s major contention on this appeal is that we should overturn the trial court’s determination that the regulations promulgated by the commission concerning “written public notice” were insufficient to meet the standard imposed by the Act of 1972, a standard which required a concerted effort to include the public in the administrative deliberations of the various commissions. We have pointed out that concern for public participation permeates the Act of 1972, and that this concern has not been abandoned in any respect by the Act of 1976. In light of the legislative directive we perceive in this regard, we consider the validity of the commission regulations.
 

 Our immediate concern is whether the regulations under discussion here satisfied the statutorily imposed task. Appellant relies on
 
 State of California
 
 v.
 
 Superior Court (Veta)
 
 (1974) 12 Cal.3d 237 [115 Cal.Rptr. 497, 524 P.2d 1281], a decision which involved a developer (Veta) who attempted to bypass the administrative machinery set up by the California Coastal Zone Conservation Commission for the issuance of construction permits; the California Supreme Court alluded to that machinery by stating that “[t]he Commission has enacted detailed regulations and procedures for the determination of claims of exemption on the ground of vested rights. [Citation.]
 
 Since Veta elected not to avail itself of these procedures
 
 it cannot now seek by mandate to compel the Commission to ‘affirm’ its claim of exemption.”
 
 (Veta, supra,
 
 12 Cal.3d 237, at p. 248.) (Italics added; fn. omitted.)
 
 Veta
 
 does not stand for the proposition that the hearing regulations, whether they be for exemptions or for permits, are valid in the face of specific attack as inadequate, but holds merely that it is constitutional to require prospective developers to participate in the administrative procedures before they will be issued a
 
 *752
 
 permit. The
 
 Veta
 
 holding does not constitute, as appellant suggests, a broad endorsement of specific regulations of the commission as valid.
 

 Nor does the
 
 CEEED
 
 case provide specific authority for upholding the regulations in question here, as it was concerned with a constitutional attack directed at the Act of 1972 as a legislative enactment affecting property use without prior notice and hearing. The court stated: “Since a hearing is not required before a nuisance standard is formulated but only when it is applied, due process rights are amply safeguarded by a hearing held on a permit application. We are satisfied, therefore, that the state need not afford affected property owners notice and an opportunity to be heard prior to
 
 enacting
 
 an interim permit system to control land use which threatens harm to the state’s resources pending development of a comprehensive plan.”
 
 (CEEED, supra,
 
 43 Cal.App.3d 306, at p. 319.) (Italics in original.)
 

 Neither
 
 Veta
 
 nor
 
 CEEED
 
 addresses directly the question of what constitutes “written public notice” of a hearing on a construction permit, and thus are not authority directly in point on the issue raised in the case at bench.
 

 The trial court, while observing that it was “not within its province” to rewrite the regulations in question, found particular fault with appellant’s procedure of only sending notice by mail to property
 
 owners
 
 within 100 feet of the proposed development.
 
 [3]
 

 Any discussion of what constitutes adequate “written public notice” must, to make such discussion meaningful, identify those persons to whom the giving of notice is required. Obviously, while the Act of 1972 contemplated a high level of public participation, it did not mandate direct notice by mail to all Californians of the agendas of every coastal commission; such would be ludicrously burdensome on all involved in the coastal zone process.
 

 We prefer to deal with the much narrower question of what constitutes adequate “written public notice” to those persons more directly and specifically
 
 affected
 
 by the matters subject to administrative decision. The term “affected” was employed by the California Supreme Court in
 
 *753
 

 Scott
 
 v.
 
 City of Indian Wells
 
 (1972) 6 Cal.3d 541 [99 Cal.Rptr. 745, 492 P.2d 1137], a decision which broadened the scope of the class affected by local zoning decisions to include nonresidents of a particular municipality who in fact lived near the area in question.
 

 Residents such as are involved in the case at bench, may include more persons than property owners. The important element is that they be affected by the administrative decisions regarding land use. The fact that this principle substantially enlarges the persons to whom notice must be given cannot defeat the necessity for meeting the requirement implied in
 
 Scott.
 
 As was stated in
 
 Residents of Beverly Glen, Inc.
 
 v.
 
 City of Los Angeles
 
 (1973) 34 Cal.App.3d 117, 122 [109 Cal.Rptr. 724], “. . . environmental concerns underlie this action. Such matters are the proper subject of judicial consideration. ‘. . . Aesthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society, and the fact that particular environmental interests are shared by the many rather than the few does not make them less deserving- of legal protection through the judicial process.’
 
 (Sierra Club
 
 v.
 
 Morton,
 
 405 U.S. 727, 734 [31 L.Ed.2d 636, 643, 92 S.Ct. 1361].)”
 

 We have no difficulty in concluding that property owners within 100 feet of a coastal zone development project are
 
 not
 
 the only persons affected by the development, but that
 
 residents,
 
 whether owners of the property or not, are included in the affected group. Thus, petitioners were entitled to adequate “written public notice” of the hearing concerning the issuance of the Presser construction permit.
 

 The landmark case on “notice,”
 
 Mullane
 
 v.
 
 Central Hanover Tr. Co.
 
 (1950) 339 U.S. 306, 315 [94 L.Ed. 865, 874, 70 S.Ct. 652], tells us that “when notice is a person’s due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing [that person] might reasonably adopt to accomplish it.”
 

 In our view, a reasonable means for informing those likely to be directly affected by the Presser decision was not contained in the regulations on notice promulgated by the commission. Neither one posting on the lot in question nor notice to landowners, nor posting in nearby public buildings is reasonably likely to reach those affected the most—nearby residents. An occupancy mailing—to those within 100 feet of the proposed project—would be more likely to reach and inform persons such as the petitioners. Appellant’s argument that the interpretation of regulations made by the administrative bodies most intimately
 
 *754
 
 involved is entitled to great weight when the regulations are subject to judicial review
 
 (REA Enterprises
 
 v.
 
 California Coastal Zone Conservation Com.
 
 (1975) 52 Cal.App.3d 596, 611 [125 Cal.Rptr. 201]) falls in the face of a record which demonstrates that, even had the regulations been followed to the letter, persons such as the petitioners would not have received notice; in the instant case, the only petitioner who did learn of the impending hearing, was apprised of that fact by happenstance, rather than by design.
 

 Appellant contends that
 
 Kennedy
 
 v.
 
 South Coast Regional Coastal etc. Com.
 
 (1977) 68 Cal.App.3d 660 [137 Cal.Rptr. 396] should mandate that the regulations on notice, issued pursuant to section 27420, subdivision (b), satisfy due-process-of-law requirements.
 
 Kennedy
 
 is not at all dispositive of the case at bench. The due process attack upon the sufficiency of the “notice” involved in
 
 Kennedy
 
 related to the
 
 content
 
 of the written notice distributed, and not to the sufficiency of the distribution. The
 
 Kennedy
 
 court’s statement that “[w]e, therefore, have no hesitancy in concluding that the dissemination of the notice in the manner in which it was distributed was ‘according to common experience’ ‘reasonably adequate to the purpose’ of advising potential objectors so as to generate the public input contemplated by section 27001 of the code. Said notice, therefore fulfilled due process standards”
 
 (Kennedy, supra,
 
 68 Cal.App.3d 660, at p. 672) is dictum with respect to the issue of adequacy of notice to meet due process standards that is involved in the case before us. If the
 
 Kennedy
 
 court intended that its holding should also govern the issue before us, we decline to follow such holding since we do not find any reasoning therein persuasive with respect to the issue presented in the case at bench.
 

 Our conclusion, then, is that the regulatory scheme was inadequate, taken as a whole, to meet the requirement of section 27420, subdivision (b), to give “written public notice” of a hearing in the issuance of coastal permits, and that in the case at bench, the trial court correctly directed the setting aside of the Presser permit. The major inadequacy we perceive is that, as a demonstrable reality, the regulations failed to inform the
 
 immediate neighbors
 
 of a proposed development in their . midst.
 

 Appellant argues that an occupancy mailing would be difficult to enforce, would be unreasonable and/or impossible to achieve. We disagree. The regulations now place the burden on the permit applicant to ascertain the identity of property owners within the limited area of 100
 
 *755
 
 feet; to require him to provide envelopes addressed to occupants within the same limited area does not substantially increase his burden.
 

 We decline to offer specific suggestions on what the occupancy notice should contain, or in what manner the regional commissions shall choose to ascertain with particularity that such notice has been given; given the directive of the coastal legislation, however, it is apparent that the burden must be shared by
 
 both
 
 the applicant and the regional commissions to ensure that adequate notice is in fact given.
 

 Appellant argues that, if we affirm the trial court’s determination that the regulations are inadequate to meet the statutory purpose, we throw into doubt thousands of determinations that already have been made pursuant to the regulations at the administrative level. In
 
 Barber
 
 v.
 
 State Personnel Bd.
 
 (1976) 18 Cal.3d 395, 400 [134 Cal.Rptr. 206, 556 P.2d 306], the court observed that “[a]s a general rule, a decision of a court overruling a prior decision or invalidating a statute will be given full retroactive effect. [Citations.] Exceptions to this general rule are recognized when considerations of fairness and public policy preclude full retroactivity. [Citations.] Two factors of primary importance in resolving the issue of retroactivity are the extent to which the change in the law was foreshadowed and foreseeable and the extent of the reliance placed upon the former rule of law. [Citations.]”
 

 The principles set forth in
 
 Barber
 
 are equally applicable to determinations of invalidity of administrative regulations. We note that the public policy with respect to coastline development is relatively new in terms of being expressed in statutory and regulatory terms. Concern with the environment has only relatively recently become a source of preoccupation in America. The Act of 1972 represented a major, modern effort to deal with environmental reality. The regulations in question here were unquestionably fashioned in good faith to meet the statutory requirement of section 27420, subdivision (b), and were relied upon by many persons. Fairness dictates that, particularly since the Act of 1976 now applies, the commissions be given an opportunity to write their regulations to ensure that information reach those most affected by the administrative decisions to be made. Therefore, although we hold that the trial court’s determination that the Presser permit was invalidly issued was a correct determination, we also hold that the trial court’s determination that the regulations were invalid, and our affirmance of that invalidation, are to be prospective only—applicable to those permit applications made after the effective date of this opinion.
 

 
 *756
 
 However, we strike from the judgment that portion in which the trial court sets forth specific provisions with respect to the notice to be given in the event of a rehearing. Appellant has the function of making the applicable rules in this area; the judiciary should avoid attempting to invade what is essentially a legislative function.
 

 We modify the judgment by striking therefrom that portion reading: “Pending the adoption of new and valid regulations, the following rules shall govern: Written notice shall be sent to all persons who are record owners, as of a date not earlier than 30 days before the hearing, of property within 100 feet of the applicant’s property. Written notice shall be posted in a conspicuous place upon the property, and in not less than six prominent public places within a radius of ten miles of the applicant’s property, including particularly the Venice Branch of the Los Angeles Public Library, the Building Department at the West Los Angeles Municipal Building and the Santa Monica City Hall.”
 

 The judgment is affirmed in all other respects.
 

 Petitioners—respondents on appeal—shall recover their costs on appeal.
 

 Kingsley, Acting P. J., and Dunn, J., concurred.
 

 [1]
 

 All references, unless specifically designated otherwise, are to the Public Resources Code.
 

 [2]
 

 All references to regulations refer to those set forth in California Administrative Code, title 14, division 5.5, section 13001 et seq.
 

 [3]
 

 The court also took issue with the fact that when a hearing was continued for many months, apparently the same list was used to give notice of a new hearing date; the court was of the opinion that a new list should be prepared under such circumstances, to take into account changes in ownership.