IN RE BURK.

[No. 10,142. Filed January 17, 1918.] ·

1. MASTER AND SERVANT.—*Workmen's Compensation Act.—Construction.—Injuries to Employes.—Reports to Industrial Board.*— An employer who has availed himself of §2 and §3 of the Workmen's Compensation Act (Acts 1915 p. 392), providing that he may exempt himself from the operation of the act by serving and posting due notice, is required to make the reports ·specified by .§67 as to injuries sustained by his employes in the course of their employment. p. 436.

2. MASTER AND SERVANT.—*Workmen's Compensation Act.—Actions for Penalties.—Who May Sue.*—As §§251, 252 Burns 1914, §§251, 252 R. S. 1881, provide that every action must be prosecuted by the real party in interest, except that a person expressly authorized by statute may sue without joining with him the person for whose benefit the action is brought, and as the· word "person" under the terms of §1356 Burns 1914, §1285 R. S. 1881, extends to bodies politic and corporate, and since the Industrial Board is expressly authorized to sue for the penalty under §67 of the Workmen's Compensation Act, Acts 1915 p. 392, for failure to make required reports as to injuries sustained by employes, an action for such penalty, which inures to the benefit of the state, may be brought by the state as the real party in interest or by the Industrial Board. p. 439.

3. · MASTER AND SERVANT.—*Workmen's Compensation. Act.—Action for Penalties.—Venue.*—Under §67 of the Workmen's Compensation Act, Acts 1915 p. 392, providing for the recovery of a penalty from thé employer for failure to keep a record of injuries sustained by his employes and to mail a report thereof to the Industrial Board, the venue of an action to recover the penalty is in the county where the employer's business is located, since the failure to make and mail the report occurs in that county. (*In re Industrial Board* [1917], 65 Ind. App. 550, and *State v. Yocum* [1914], 182 Ind. 478, distinguished.) p. 441.

From the Industrial Board of Indiana.

Certified questions of law.

Proceedings under the Workmen's Compensation Act in the matter of one Burk. Certified questions of law by the Industrial Board. Questions *answered*.

CALDWELL, J.—Section 67 of the Workmen's Compensation Act (Acts of 1915 p. 392) is to the effect that every employer shall keep a record of all personal injuries suffered by his employes in the course of their employment, and that within certain specified times certain reports of the facts shall be made in writing by the employer involved in each case, and mailed to the Industrial Board on blanks to be procured from the board for that purpose, and that any employer who refuses or neglects to make such reports "shall be liable to a penalty of not more than twenty-five dollars for each refusal or neglect, to be recoverable in any court of competent jurisdiction in a suit by the board." By the terms of §2 every employer, except as otherwise stated in the act, is presumed to have accepted, and to have elected to be bound by, its compensatory requirements, unless he shall have given notice to the contrary as provided by §3.

The Industrial Board seeks the opinion of this court as indicated by certified questions based on said sections to the following effect: (1) Is an employer who has availed himself of the exemption features of §§2 and 3 required to make the reports specified by §67? (2) In whose name as plaintiff should an action to recover a penalty under §67 be prosecuted? (3) Where an employer resides and conducts his business in Madison county, and an employe suffers an injury there, in what county is the venue of such an action?

There are certain provisions of the act that seem to require that the first question be answered in the affirmative. Thus §3 is to the effect that an

1. employer by serving and posting a notice to that effect may exempt himself from the

operation of the act. Subsequently, however, after he has so exempted himself, he may waive such exemption, which waiver by the terms of the section is equivalent to an acceptance. Section 3 literally speaks of an exemption "from the operation of this act," but by reading §3 in the light of §2 it appears that exemption, and consequently that acceptance, presumptive or on notice, relates only to those features of the act that require that compensation be paid in case an employe suffers a personal injury or death by accident arising out of and in the course of the employment. There is a like indication from the fact that by the provisions of §3 notice of exemption or of acceptance is required to be served not on the public or the Industrial Board but by posting in the plant where the employes work, or by serving it personally on them. It seems, then, that a fair construction of §§2 and 3 leads to the conclusion that an employer's right to elect thereunder is limited to a choice in advance whether his liability to injured employes shall be measured by the compensatory features of the act, or determined in some other form of statutory proceedings, or in a common-law action with defenses circumscribed as provided by other sections of the act. Other provisions of the act strengthen such conclusion: Thus by §4 the effect of an exemption notice given under §3 is to exempt the employer from the operation of the act, except certain sections, one of which is §67. It follows by very strong implication that, although such notice is given, such an employer must nevertheless comply with §67. Section 9 is to the effect that the act, except §67, shall not apply to the employers of casual laborers, farm or agricultural laborers, or domestic servants, unless such employers elect to be bound by

the act; and by the terms of §19 there is a like lim-
itation and a like exception in case of employers
engaged in interstate or foreign commerce. It is
apparent from these sections that it was the legisla-
tive intent in passing the act to require other
employers than those operating under its compen-
satory provisions to comply with §67. We conclude
that the first question must be answered in the
affirmative.

There is another viewpoint from which such con-
clusion is rendered more certain. Thus, while the
creating of a compensatory scheme was prominent
among the purposes that led to the enactment, yet
there were other purposes, among them, as indicated
by the title, being "to promote the prevention of
industrial accidents." In order that industrial acci-
dents may be prevented to the extent reasonably pos-
sible, a first essential is that it may be known that
accidents happen, and the circumstances and the
working conditions under which they happen. To
that end the reports specified by §67 are required to
be made, which reports for a like purpose the board,
by the provisions of §57, is required to tabulate, and
to publish the tabulations periodically. In any
scheme to prevent industrial accidents, the question
of whether the employer involved in any particular
accident is operating under the compensatory fea-
tures of the act is not an important or essential ele-
ment. Further to carry out such preventive pur-
pose, and also to unify its administration, by the
terms of §52 of the act, the bureau of inspection was
abolished, and its powers and duties conferred by
law were continued in force and transferred to the
Industrial Board. Such powers and duties so trans-

ferred are outlined by §8021 *et seq.* Burns 1914, Acts 1899 p. 231. An examination of such sections discloses that by virtue of such transferred powers and duties the Industrial Board is authorized and required to maintain a general oversight respecting the conditions under which the industrial workers of the state perform their labors, and to take steps in many cases to render such conditions reasonably safe. To that end the reports specified by §67 are essential. We therefore answer the first question in the affirmative.

We proceed to the second question: Every action must be prosecuted in the name of the real party in interest, subject to certain exceptions, among 2. them, that a person expressly authorized by statute may sue without joining with him the person for whose benefit the action is prosecuted. §§251, 252 Burns 1914, §§251, 252 R. S. 1881. The real party in interest is the party entitled to receive the benefits of the suit. *Franklin Ins. Co.* v. *Wolff* (1899), 23 Ind. App. 549, 54 N. E. 772. The word "person" as used in the foregoing statutes "extends to bodies politic and corporate" (§1356 Burns 1914, §1285 R. S. 1881), which term includes the state, *Erwin* v. *State, ex rel.* (1897), 150 Ind. 332, 48 N. E. 249. If the provisions of §§252 and 1356, to which we have referred, be construed together, it results that a natural person or a body politic or corporate, although not the real party in interest, if expressly authorized by statute, may sue without joining the person for whose benefit the action is prosecuted. Ordinarily the term "body politic and corporate" includes only corporations, private, public and governmental. 8 C. J. 1136, 1137. Such an organiza-

tion as the Industrial Board of Indiana is an agency of state government, rather than a body politic or corporate. 1 Thompson, Corporations §21.

From what we have said, it appears that by virtue of §252, *supra*, a person expressly authorized by statute to do so may sue. That section is yet in force. Section 1356, *supra*, simply construes the word "person" as used in §252. But the Workmen's Compensation Act, *supra*, is a later enactment than either of these sections, and by its provisions the board, regardless of whether it be a body politic or corporate, is expressly authorized by statute to sue for the penalties incurred under such section. It would therefore seem from a construction of §252 with §67 that the board may maintain the action provided for by the latter section. The Workmen's Compensation Act makes no disposition of the amount of any such penalty that may be recovered, and consequently any such penalty when so recovered belongs to the state. It would therefore seem that the state in its own name may sue to recover such penalty, it being the real party in interest (*Durham* v. *State* [1889], 117 Ind. 477, 480, 19 N. E. 327) ; but *prima facie* at least it would seem, as we have said, that the board by §252, *supra*, and §67 of the Workmen's Compensation Act, *supra*, may maintain such a suit, although not a body politic or corporate. An action, however, must be brought in the name of one having a legal entity. 30 Cyc 21, 26, 27. "Entity" means a real being; existence. International Dictionary. "Legal entity" therefore means legal existence. The Industrial Board of Indiana is a creature of the statute. Under the statute its existence is perpetual, although its membership may change, and under the Workmen's Compensation Act it is charged with

important duties. It is an organized body with a chairman and a secretary. §50 *et seq.,* Workmen's Compensation Act. It therefore has a legal existence. In our opinion it is such a legal entity as may be expressly authorized by statute to sue. By §67 of such act it is so authorized. We therefore conclude that either the state as the real party in interest, or the board as such, because expressly authorized, may maintain an action for a penalty under §67.

We proceed to the third question. That part of §67 applicable to this question is to the effect that where an employe suffers an injury in the course of his employment, the employer within one week after such injury and knowledge thereof shall make a report of the facts in writing, and mail it to the Industrial Board on blanks to be procured from the board for that purpose. Failure to do so subjects the employer to a penalty as hereinbefore set out. Section 54 is to the effect that the board shall be provided with adequate offices in the city of Indianapolis, in which its records shall be kept and its official business transacted during regular business hours. By the terms of §69 it is made a misdemeanor punishable by fine for an employer to refuse or neglect to file with the board evidence that he has complied with certain other requirements of the act. In *In re Industrial Board* (1917), 65 Ind. App. 550, 117 N. E. 546, this court, in response to a certified question, handed down an opinion that the venue of a criminal prosecution under §69 is in Marion county, being the county in which Indianapolis is located, assigning as a reason for the opinion that the filing required by §69 is an act to be performed at the office of the board, which is in Marion county. The court there cites in support of its

opinion *State* v. *Yocum* (1914), 182 Ind. 478, 106 N. E. 705. That was a prosecution of a father under §2635a Burns 1914, Acts 1913 p. 956, for a wilful failure to provide his children with necessary food, clothing, etc. The parents had been divorced in Pulaski county, and the custody of the children awarded to the mother without restrictions as to future residence. For proper purposes she removed with them to Allen county. It was there held that the venue of the prosecution was in Allen county, the court saying: "They (the children) were required to be provided for by appellee (the father) at the place where they were. A neglect to discharge the obligation of the law there broke the law there." For other similar cases see note to *State* v. *Gillmore* (1913), 47 L. R. A. (N. S.) 217. We do not regard these cases as controlling here. The idea conveyed by the word "file," when used as a verb respecting the disposition of a document, is the placing of such document in charge of the proper custodian or recipient for safe keeping or other purpose. Such a document as is specified by §69 could therefore be properly filed with the board only by delivering it into the custody of the board at its office where its records are required to be kept and its official business transacted. As to the Yocum case, to provide food, clothing, etc., for a child involves that such food, clothing, etc., be placed or furnished so as to be immediately available to supply the necessities of the child. It results that in the one case the failure is at the office of the board, and in the other at the residence of the child.

The statute involved here requires that a certain report be made in writing, and that it be mailed to the board. It might very plausibly be argued that

the making of a written report to the board includes
its actual delivery, were it not for the provision that
the report be mailed. It would seem that the latter
provision narrows the conception that might other-
wise be formed respecting the requirement that a
written report be made to the board. In §67 the
making of the report plainly has reference to placing
it on paper properly signed. When the report is
thus made, the statute requires that it be mailed to
the board; only this and nothing more. The
employer is not required to deliver it to the board, or
to file it with the board. The statute names the
United States mail as the agency of transmission,
and requires of the employer only that he deliver it
properly to such agency. When he has done so he
has performed every act that the act requires of him.
We are not at present dealing with a case wherein
for some reason a report properly mailed fails to
reach its destination, or with what would be the fur-
ther duties of an employer, if any, under such cir-
cumstances. We are content to state that respecting
any report required by §67, the employer has per-
formed his full duty when he has properly made and
mailed it. The making of such report and the mail-
ing of it are duties properly connected with the
employer's place of business, and ought reasonably
to be expected to be performed there. A failure to
perform such duty is therefore a failure at such
place. Section 310 Burns 1914, §308 R. S. 1881, is to
the effect that actions for the recovery of a penalty
imposed by statute should be commenced in the
county where the cause, or some part of it, arose,
with exceptions not applicable here. Where a cause
of action is predicated upon the failure to perform
an act, the cause of action arises when the failure is

complete; and where the act is not performed, the failure is complete at the place where it should be performed, and consequently the cause of action there arises. We therefore answer the third ques- tion that in our opinion the venue is in Madison county.

NOTE.—Reported in 118 N. E. 540.