[Civ. No. 36576. First Dist., Div. Three. Dec. 12, 1975.]

CLIFF SANDERS et al., Plaintiffs and Appellants, v.
PACIFIC GAS AND ELECTRIC COMPANY et al.,
Defendant and Respondent;
CALIFORNIA COASTAL ZONE CONSERVATION
COMMISSION et al., Interveners and Appellants.

## Counsel

Harold A. Irish and Nancy Biggins for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, R. H. Connett and Mark I. Weinberger, Deputy Attorneys General, for Interveners and Appellants.

No appearance for Defendant and Respondent.

## Opinion

**CARKEET, J.***—This case involves two issues on appeal: (1) Whether an intervention by the state after hearing but before judgment is proper under section 387 of the Code of Civil Procedure? (2) Whether civil penalties assessed under the California Coastal Zone Conservation Act are to be awarded to the state or to the party which maintains the action?

By an initiative measure in the general election held November 7, 1972, the voters approved Proposition 20 enacting the California Coastal Zone Conservation Act of 1972 (Coastal Act) Public Resources Code section 27000 et seq.[1] The following are the portions of that act relevant to this action:

"Any person may maintain an action for declaratory and equitable relief to restrain violation of this division. No bond shall be required for an action under this section." (§ 27425.)

"Any person may maintain an action for the recovery of civil penalties provided in Sections 27500 and 27501." (§ 27426.)

"The provisions of this article shall be in addition to· any other remedies available at law." (§ 27427.)

"Any person who prevails in a civil action brought to enjoin a violation of this division or to recover civil penalties shall be awarded his costs, including reasonable attorneys fees." (§ 27428.)

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]Unless otherwise specified, code section references herein cited refer to the Public Resources Code.

"Any person who violates any provision of this division shall be subject to a civil fine not to exceed ten thousand dollars ($10,000)." (§ 27500.)

"In addition to any other penalties, any person who performs any development in violation of this division shall be subject to a civil fine not to exceed five hundred dollars ($500) per day for each day in which such violation persists." (§ 27501.)

On February 1, 1973, respondent Pacific Gas & Electric Company (PG&E) commenced construction of an overhead electrical utility line to service a residence located near an ocean bluff on the coastline of Mendocino County within the 1,000-foot coastal zone established by the act and subject to the provisions of the Coastal Act.

Plaintiffs are owners of real property in Mendocino County who commenced the present action in the Mendocino County Superior Court against PG&E on February 2, 1973, alleging that plaintiffs' line-of-sight to the Pacific Ocean was partially obstructed by the construction of the utility line, and claiming that PG&E failed to obtain a permit before construction in violation of section 27400 of the Coastal Act and failed to make an environmental impact report pursuant to the act. Plaintiffs sought to enjoin construction of the utility line and to recover damages for diminution of the value of plaintiffs' real property. The complaint contained no prayer for civil penalties to be paid to plaintiffs.[2]

On March 29, 1973, PG&E commenced efforts to obtain a permit for the construction of the subject utility line from the North Coast Regional Commission of the California Coastal Zone Conservation Commission.[3] The application was denied on August 9, 1973. No appeal was filed by PG&E and the utility line was removed by PG&E on October 12, 1973.

---

[2]Paragraph X of the complaint does, however, allege: " . . . Defendants are liable for civil penalties pursuant to Sections 27500 and 27501 of the Public Resources Code, and Plaintiffs bring this action for the additional purpose of the recovery of such penalties."

[3]After the issuance of a preliminary injunction sought by plaintiffs, PG&E applied on March 29, 1973, to the California Coastal Zone Conservation Commission, North Coast Region, for a permit, which the commission purported to grant without public notice on April 11, 1973. It was only after plaintiffs filed both an appeal to the state commission and a petition for reconsideration to the North Coast Regional Commission, that this action was rescinded and set for public hearing, which application for permit was denied on August 9, 1973.

After hearing, a preliminary injunction was issued on March 19, 1973. At the trial which was heard on July 16, 1974, plaintiffs moved to amend the prayer of their complaint to ask for civil penalties under section 27426, and although receiving evidence on this issue the court reserved decision on plaintiff's motion pending research and briefing.

Under representation to the trial judge that the office of the California Attorney General did not receive notice in this lawsuit, the trial judge vacated and set aside the previous briefing schedule and submission order on August 13, 1974, and by an ex parte order on August 16, 1974, granted the Attorney General leave to file a complaint in intervention and for declaratory relief, seeking a declaration that under the Coastal Act whatever civil penalties are assessed should be awarded to the interveners, California Coastal Zone Conservation Commission, State of California for payment into the state general fund. Plaintiffs' subsequent motion to dismiss the complaint in intervention was denied and the state subsequently filed a brief addressed to the questions raised on this appeal.

The trial court entered judgment against PG&E on December 10, 1974, and assessed civil penalties of $880 against PG&E (on the basis of a small fine for each day that PG&E was in violation of the Coastal Act), under section 27501, and awarded $3,250 in attorneys' fees to plaintiffs under section 27428. The trial court assessed no fine under section 27500. In the judgment which was rendered, the court below divided the civil penalties equally between the plaintiffs and the state. State's motion to set aside and vacate the judgment was denied by the trial court on January 17, 1975. Both state and plaintiffs appealed from the judgment entered below.

This court addresses itself to the two issues presented in this appeal in the order presented in the briefs.

1. *Was the intervention of the state after the hearing, but before judgment proper under section 387 of the Code of Civil Procedure?*

The record in this case discloses that when the original complaint was filed in this action the plaintiffs overlooked the requirements of Code of Civil Procedure section 389.6 and failed to serve the Attorney General with a copy of the complaint and summons. This was finally done on August 2, 1973, six months after the filing of the complaint, after proceedings had taken place on the preliminary

injunction and within one week before the hearing on PG&E's permit application. The complaint did not indicate plaintiffs were seeking civil damage recovery to be paid to themselves, but rather, indicated to the Attorney General that plaintiffs sought an injunction and individual damages for diminution of the value of their own property.

The Attorney General's office therefore did not participate in the trial (hearing) on July 16, 1974.

At the beginning of the trial the plaintiffs pointed out to the court that the prayer of the complaint was imperfect, in that it did not specifically ask for recovery of civil penalties, "although paragraph X of the First Cause of Action clearly set out that this was sought by plaintiffs."[4]

Plaintiffs' opening brief after trial was filed on July 31, 1974, and recites the request for permission to amend the complaint to provide for civil damages, but the brief was not served on the Attorney General. The latter official's office did not learn of same until August 6, 1974, and then moved with utmost dispatch and filed the complaint in intervention on August 16, 1974.[5] The court on its own motion on August 13, 1974, vacated and set aside a previously made submission order. No judgment had been entered prior to the filing of the complaint in intervention. The court denied a subsequent motion by plaintiffs for dismissal of the complaint in intervention and ordered the issue of civil damages briefed.

Section 387 Code of Civil Procedure provides: "*At any time before trial,* any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding." (Italics added.)

■ Trial "is not *completed* until judgment is entered. Hence where the evidence is offered and the cause submitted, but no judgment is

---

[4]The record discloses that: "Plaintiffs moved the Court to amend the prayer accordingly to reflect the request for civil penalties and the Court allowed evidence on this issue and reserved decision on plaintiffs' motion pending a further study of the law applicable thereto."

[5]The Attorney General first learned of the demand by plaintiffs for civil damages to be paid to them in a telephone conversation with one of defendant's attorneys on August 6, 1974. At the very next meeting of the state commission on August 14, 1974, he obtained permission to file a complaint in intervention in the name of the State of California and the California Coastal Zone Conservation Commission. The Attorney General obtained an ex parte order granting leave to intervene on August 16, 1974, and filed his complaint in intervention for declaratory relief the same day.

entered, the trial is not over. (*Engleman* v. *Green* (1954) 125 Cal.App.2d Supp. 882, 885, 270 P.2d 127; *Haupt* v. *La Brea Heating etc. Co.* (1954) 125 Cal.App.2d Supp. 888, 270 P.2d 125.)" (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 1, p. 2862.)

"The phrase 'at any time *before trial*' (C.C.P. 387) might mean that the complaint in intervention must be filed before the *commencement* of the trial. (See 37 A.L.R.2d 1326 [construction of statutes authorizing intervention before trial].) And there are dicta to that effect. Thus, in *Coburn* v. *Smart* (1879) 53 C. 742, 744, the complaint was offered at the day of trial, before the calling of the cause on the calendar. The court held that it was timely, 'though made at the *last moment* of time permitted by the statute.' But this interpretation seems both undesirable and unsound. The intervener is not likely to become aware of the action during the relatively unnoticed pleading stage, and may not discover the facts concerning its nature and his interest until the trial with its attendant publicity. And no great harm would be done in most cases by allowing the complaint in intervention to be filed while the trial is in progress. The disruption or inconvenience would be no greater than often takes place when pleadings are amended, supplemental pleadings are filed, cross-complaints bring in new parties, or joinder of indispensable or necessary parties is ordered under C.C.P. 389. All of these steps, of course, may be taken with leave of court after the trial has begun.

"Moreover, nothing is gained by this strict interpretation. If the prospective intervener is at most a proper party, his application may be denied for lack of direct interest or for lack of diligence, in the court's discretion; a complete statutory bar is not needed. But if he is an indispensable party, or one whose presence is necessary for a complete determination of the controversy, the statutory bar is ineffective: He may be denied leave to file a complaint in intervention under C.C.P. 387, but the court still has a mandatory duty to order him joined under C.C.P. 389 . . . ." (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 201, p. 1874.)

In addition to the statutory limitation on the time of intervention, it is the general rule that a right to intervene should be asserted within a *reasonable time* and that the intervener must not be guilty of an *unreasonable delay after knowledge of the suit*. (*Allen* v. *California Water & Tel. Co.* (1947) 31 Cal.2d 104 [187 P.2d 393].)

The main purpose of intervention is to obviate delay and multiplicity of actions. (*Belt Casualty Co.* v. *Furman* (1933) 218 Cal. 359

[23 P.2d 293].) It is also the general rule that an intervention will not be allowed when it would retard the principal suit, or require a reopening of the case for further evidence, or delay the trial of the action, or change the position of the original parties. (*Hibernia etc. Soc.* v. *Churchill* (1900) 128 Cal. 633 [61 P. 278].)

 The trial court in the present case apparently felt that state's intervention would not delay the principal suit or require further evidence or delay the trial or change the position of the original parties—and plaintiffs have made no showing that any of these consequences would or might occur. It is clear, however, that intervention would prevent multiplicity of suits: If state had not been allowed to intervene it would have had to bring a separate action for the recovery of penalties awarded plaintiffs.

Plaintiffs maintain that state's right to intervene was not asserted within a reasonable time and that state was guilty of an unreasonable delay after knowledge of the suit. There is no merit to this contention. State acted *immediately* upon being informed of plaintiffs' demand for civil damages and the trial court is supported by substantial evidence in its conclusion that the state was not guilty of an unreasonable delay after knowledge of the plaintiffs' claim.

State filed in time to allow the court to decide as to the disposition of civil penalties and prevent multiplicity of suits. Plaintiffs, with or without state's intervention before the hearing would have had to make the same preparation for trial, and litigate the same issues. Sections 27425 and 27426 give plaintiffs authority to prosecute the entire action. Plaintiffs had no right to compel state's assistance and should not rely on the absence of assistance to deny state's later intervention upon learning of plaintiffs' intention to keep any civil penalties recovered. Plaintiffs have failed to show any prejudice or inconvenience from state's alleged lack of diligence.

We hold that the intervention was timely and there was no abuse of discretion by the trial court in granting the motion to intervene.

State contends that plaintiffs' cross-appeal should be dismissed because an order granting a motion for intervention is but an "intermediary order, not determining anybody's rights with finality." (*Taylor* v. *Western States L. & M. Co.* (1944) 63 Cal.App.2d 401, 403 [147 P.2d 36].) However, the order is subject to review in the appeal on the final

judgment, in which the propriety of the order is reviewed. (*Taylor, supra,* at p. 403.) Therefore, the request to dismiss plaintiffs' cross-appeal is denied.

2. *Are civil penalties assessed under the California Coastal Zone Conservation Act awarded to the state or to the party which maintains the action?*

 The trial judge assessed a civil fine against PG&E under section 27501 (per diem fines) and divided this sum ($880) between state and plaintiffs.[6] Both state and plaintiffs contend that this finding is erroneous and both claim the right to the whole of the civil penalty.

Section 27426 of the Coastal Act (Pub. Resources Code) states that "*Any person* may maintain an action *for the recovery* of civil penalties provided in sections 27500 and 27501." (Italics added.) The section is unclear as to who is to receive such civil penalties.

Plaintiffs contend (1) that section 27426 is a *qui tam* provision, and (2) that the general intent of the Coastal Act is to encourage actions which an unresponsive government refuses to prosecute for the protection of the California coast.

Black defines *qui tam* actions as: "An action brought by an informer, under a statute which establishes a penalty for the commission or omission of a certain act, and provides that the same shall be recoverable in a civil action, part of the penalty to go to any person who will bring such action and the remainder to the state or some other institution is called a '*qui tam* action'; because the plaintiff states that he sues *as well* for the state as for himself." (Black's Law Dict. (4th ed. 1951) p. 1414.)[7]

---

[6] In its findings of fact, No. X, the trial court found: "The Court finds that the Act includes no expressed provision as to the identity of the recipient of civil penalties, and that the Court has the authority to determine the apportionment of civil penalties in this case. The Court determines that one-half of the civil penalties shall be paid to the plaintiff and one-half to the State."

[7] "At common law an action thus authorized to be 'brought and carried on' by any person, 'as well for himself as the United States,' was called a 'popular' action, because given to the people in general; and when the penalty, as in this case, was given in part to the prosecutor and the remainder to the king or other public use, it was called a *qui tam* action, because the plaintiff therein was described as one who sues for the king as well as for himself—*qui tam pro domino rege, quam pro se ipso in hoc part sequitur.* The action might be maintained in any case where a statute imposed a penalty for the commission or omission of a certain act, and gave the same, in whole or in part, to any one who would sue for it; and it was brought in the name of the person prosecuting it, and was exclusively under his control. [Citations.]" (*United States* v. *Griswold* (D.Ore. 1885) 24 F. 361, 364.)

By definition, *qui tam* rights have never existed without statutory authorization. As a result, courts have been required to develop criteria to determine whether a given statute in fact authorizes *qui tam* enforcement. Traditionally, the requirements for enforcement by a citizen in a *qui tam* action have been (1) that the statute exacts a penalty; (2) that part of the penalty be paid to the informer; and (3) that, in some way, the informer be authorized to bring suit to recover the penalty. (Fischer, *Qui Tam Actions: The Role of the Private Citizen in Law Enforcement* (1973) 20 U.C.L.A. L.Rev. 778.)

The Coastal Act clearly exacts a penalty (§§ 27500, 27501) and section 27426 authorizes the informer to bring suit "for the recovery" of the penalty. Nowhere, however, does it clearly provide that the penalty, or any portion thereof, be paid to the informer.

Plaintiffs argue in support of their main contention that the statute authorizes a *qui tam* action but fail to prove that the statute authorizes payment of the penalty to plaintiffs. Plaintiffs rely on an exhaustive treatment of *qui tam* actions found in 20 U.C.L.A. L. Rev. *supra.*

All of the *qui tam* statutes discussed in the law review article cited above make express provisions for a payment of the penalties to the party authorized to bring the action. For example, the Federal False Claims Act (31 U.S.C. §§ 231-235) allows the judge to award the plaintiff up to 25 percent of the penalty unless the government intervenes, in which event the plaintiff may only be awarded up to 10 percent of the penalty. No such clear provision is made in the Coastal Act for the disposition of the civil penalties, a prerequisite for determining that section 27426 is a *qui tam* statute.

Proposition 9, the Political Reform Act of 1974 (Gov. Code, § 81000 et seq.) also proposed by an initiative measure approved by the electors at the primary election held June 4, 1974, appears to contain a true *qui tam* provision. Section 91004 of the Government Code authorizes any resident of a jurisdiction where violation of the act occurs to bring an action "for an amount not more than the amount or value not properly reported."[8] Section 91009 of the Government Code states[9] ". . . the

---

[8]Government Code section 91004 provides: "Any person who intentionally or negligently violates any of the reporting requirements of this act shall be liable in a civil action brought by the civil prosecutor or by a person residing within the jurisdiction for an amount not more than the amount of value not properly reported."

[9]Government Code section 91009 provides: "In determining the amount of liability under Sections 91004 or 91005, the court may take into account the seriousness of the

plaintiff shall receive fifty percent of the amount recovered. The remaining fifty percent shall be deposited in the General Fund of the state."[10] All three requirements of a *qui tam* action are provided for: (1) a pecuniary penalty; (2) authority to bring suit to recover the penalty; and (3) payment to the plaintiff of part of the penalty.

Plaintiffs' claim to the civil penalty must of necessity be based on interpreting the statute as intending that the *entire* penalty be paid to the "person" who brings the action.

In *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049], our Supreme Court said: "Once a particular legislative intent has been ascertained, it must be given effect 'even though it may not be consistent with the strict letter of the statute.' (*Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 802 [151 P.2d 505, 157 A.L.R. 324].) ▮ As we stated nearly a half century ago in *In re Haines* (1925) 195 Cal. 605, 613 [234 P. 883]: 'The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the legislature apparent by the statute; and if the words are sufficiently flexible to admit of some other construction it is to be adopted to effectuate that intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' " The same rules of interpretation should apply to initiative measures enacted as statutes.[11]

---

violation and the degree of culpability of the defendant. If a judgment is entered against the defendant or defendants in an action brought under Section 91004 or 91005, the plaintiff shall receive fifty percent of the amount recovered. The remaining fifty percent shall be deposited in the General Fund of the state. In an action brought by the civil prosecutor, the entire amount recovered shall be paid to the general fund or treasury of the jurisdiction."

[10]Unlike the Coastal Act, before a private plaintiff may bring suit he must file a request for the local "civil prosecutor" to commence the action. "Any person, before filing a civil action pursuant to Sections 91004 and 91005, must first file with the civil prosecutor a written request for the civil prosecutor to commence the action. The request shall include a statement of the grounds for believing a cause of action exists. The civil prosecutor shall respond within forty days after receipt of the request, indicating whether he intends to file a civil action. If the civil prosecutor indicates in the affirmative, and files suit within forty days thereafter, no other action may be brought unless the action brought by the civil prosecutor is dismissed without prejudice as provided for in Section 91008." (Gov. Code, § 91007.)

[11]Other than the provisions of the act itself, there is very little material for interpreting the meaning. The ballot arguments and the detailed analysis of the Legislative Counsel contained in the ballot pamphlet furnished voters may be used to interpret an initiative measure. (See, e.g., *San Diego Coast Regional Com.* v. *See The Sea, Limited* (1973) 9 Cal.3d 888, 891 [109 Cal.Rptr. 377, 513 P.2d 129]; *Crees* v. *California State Board of Medical Examiners* (1963) 213 Cal.App.2d 195, 211 [28 Cal.Rptr. 621].) This material

█ The policy behind the Coastal Act is expressed in section 27001.[12] The act then gives "any person" seemingly without any restrictions (§ 27105) *standing* to (1) bring an action without bond for "declaratory and equitable relief to restrain violation of this [act] . . . ." (§ 27425) and (2) to bring an action for "recovery of civil penalties." (§ 27426.) Any person may bring these actions "in addition to any other remedies available at law." (§ 27427.) And, "Any person who prevails in a civil action brought to enjoin a violation of this [act] or to recover civil penalties shall be awarded his costs, including reasonable attorneys fees." (§ 27428.) These sections state a clear intent to encourage private plaintiffs to enforce the act. Plaintiffs argue in their brief on appeal,[13] not without some degree of emotional and philosophical appeal, that it is consistent with the above purpose to interpret section 27426 as meaning that plaintiffs may retain any civil penalty as an additional inducement to bring the action.

restates the policy provisions of section 27001 but does not mention the question at issue here except for the following fragment: "Provide criminal penalties for violation of provisions relating to conflict of interest and specify civil fines for violation of other provisions of the act." (Ballot Pamp. Arguments, Gen. Election (Nov. 7, 1972) p. 52.) We also have the legislative history of the aborted bills, Assembly Bill No. 1471 and Senate Bill No. 200, discussed above.

[12]Section 27001 provides: "The people of the State of California hereby find and declare that the California *coastal zone is a distinct and valuable natural resource* belonging to *all the people* and existing as a delicately balanced ecosystem; that the *permanent protection* of the remaining natural and scenic resources of the coastal zone is a *paramount concern* to present and future residents of the state and nation; that in order to promote the public safety, health, and welfare, and to protect public and private property, wildlife, marine fisheries, and other ocean resources, and the natural environment, it is necessary to preserve the ecological balance of the coastal zone and prevent its further deterioration and destruction; that it is the *policy of the state to preserve, protect, and where possible, to restore* the resources of the coastal zone for the enjoyment of the current and succeeding generations; and that to protect the coastal zone it is necessary: (a) To study the coastal zone to determine the ecological planning principles and assumptions needed to ensure conservation of coastal zone resources. (b) To prepare, based upon such study and in full consultation with all affected governmental agencies, private interests, and the general public, a comprehensive, coordinated, enforceable plan for the orderly, long-range conservation and management of the natural resources of the coastal zone, to be known as the California Coastal Zone Conservation Plan. (c) To *ensure* that any *development* which occurs in the permit area *during the study and planning period will be consistent with the objectives of this division.* (d) To create the California Coastal Zone Conservation Commission, and six regional coastal zone conservation commissions, to implement the provisions of this division." (Italics added.)

[13]"The electors made a determination that the stress and crisis of coastal preservation was not adequately protected by injunctions or piecemeal criminal sanctions; accordingly, they chose to resurrect the uncommon and extraordinary remedy as above discussed. One good reason for using an extraordinary remedy is to overcome the inertia and active defiance occasioned by controlling what has previously been lawful conduct. . . . The only chance that society has for anyone to factually consider its interest is for

State argues that the act sufficiently encourages suits without awarding civil penalties to plaintiffs by (1) allowing costs and attorneys' fees; (2) conferring unrestricted standing; (3) requiring no bond; and (4) allowing these actions in addition to other remedies plaintiff may have such as suits for recovery of damages. Suits under the act are to promote a public rather than a private purpose: The protection of the coast. Allowing plaintiffs to retain civil penalties in the absence of express authorization, state argues, would alter this purpose and turn the citizenry from benevolent protectors into greedy bounty hunters.

"Awarding attorneys fees to successful citizen plaintiffs and thereby encouraging citizens' suits will be consistent with the general statutory design for encouraging citizen involvement in the planning and permit processes." (Miller, *Enforcing the Coastal Act—Citizens' Suits and Attorneys Fees* (1974) 49 State Bar J. 237, 241.)

The position advanced by the state is supported by the deletion of the reward provisions from the original draft of the coastal legislation.

The first version of an almost identical act was introduced to the Assembly on April 1, 1971, Assembly Bill No. 1471, and provided for the person maintaining the action to receive one-third of any penalty imposed, but required 60 days notice to the Attorney General of intention to commence such action.[14] The counterpart of section 27426 was struck from the bill before the bill died in the Senate.[15]

---

actions to be available to the general public which actions are considered by the judiciary, that branch of government least affected by political facts and pressures. [¶] This Court could take notice of those conditions which have made conventional enforcement of environmental protections inadequate and futile. . . . [¶] But, environmental plaintiffs as a prospective class are not possessed of the money to justify environmental suits under traditional causes of action. Because of their complexity, environmental cases need massive input . . . not to mention the participation of attorneys with the competency needful for such complexities. An ordinary member of the public is usually unable to produce the case necessary to obtain these items; . . . The effect of award of penalties to private persons provides motivation for such an undertaking."

[14]Section 27426 of the Coastal Act, as introduced in the original bill, read as follows (it was originally number § 27428): "Any person may maintain an action to recover civil penalties pursuant to Sections 27500 and 27501 and shall be entitled to receive one-third of any penalty imposed upon the defendant. Such person, however, shall first give 60 days written notice to the Attorney General and the chairman of the commission of his intention to commence such an action, stating with particularity the identity of the defendant or defendants and the ground or grounds for such action."

[15]This language providing for a reward remained in the bill until the amendments in the Senate, November 3, 1971, when this section was struck from the bill. The bill died in the Senate and was returned to the Assembly without action on January 3, 1972. (1971 Assem. J., p. 12726.)

On January 24, 1972, at the next session of the Legislature the section was introduced as a part of Senate Bill No. 200 without the reward provision and the phrase, "may maintain an action *to recover* civil penalties," was changed to read "may maintain an action *for the recovery* of civil penalties."[16] (Italics added.) Once again this section was struck by the Senate (July 20, 1972). The section, as presented to the voters in Proposition 20, read the same as noted in footnote 16, except the words "pursuant to" were changed to "provided in" and the final sentence requiring notice to the Attorney General was deleted.[17]

*Qui tam* actions were eventually abolished in England completely,[18] because they had been persistently abused.[19] Some of the disadvantages arising from its permissive use were: It continually made adversaries out of ordinary, but unrelated citizens; it gave what many considered to be excessive powers to prospective plaintiffs, and, when not carefully controlled, it was subject to abuse, becoming vexatious or resulting in suits settled for an amount prejudicial to the government's interest.[20] Additional problems created by *qui tam* statutes include the danger that they can cause a serious increase in civil litigation and thereby exacerbate the already serious overloading of the court system. While it might be contended that this is merely a part of the increased societal cost of an improvement in law enforcement, there is a serious question as to the efficiency of this technique in that the societal expense of *qui tam* might be excessive as compared to its beneficial effects. Even if private attorneys could become as efficient as government in enforcing the law, it may recreate the unfavorable situation in England when *qui tam* was controlled by an elite group of professional plaintiffs.[21]

---

[16]"Any person may maintain an action for the recovery of civil penalties pursuant to Sections 27500 and 27501. Such person, however, shall first give 60 days written notice to the Attorney General and the chairman of the commission of his intention to commence such an action, stating with particularity the identity of the defendant and the ground for such action." (§ 27428.)

[17]Notice to the Attorney General is required in all environmental units under section 389.6 of the Code of Civil Procedure. This section was added by the 1971 session of the Legislature and may be the reason the notice provision was·dropped from the Coastal Act.

[18]Common Informers Act of 1951, 14 and 15 Geo. VI, chapter 39.

[19]"The activities of the *qui tam* plaintiff were regarded by the general populace as a disquieting and aggravating nuisance, even though the government felt that *qui tam* was a necessary tool. Over a period of time, a small band of professional *qui tam* plaintiffs arose, with all the undesirable characteristics that the word 'bounty-hunter' implies." (20 U.C.L.A. L.Rev., *supra,* fn. 6, at p. 779; italics added.)

[20]20 U.C.L.A. L. Rev. *supra,* at page 779.

[21]*Ibid.*

No doubt all these arguments were considered by the drafters of the original legislation and eventually copied by the drafters of the initiative, and whatever reasons they chose, their results were an unmistakable elimination of the language awarding any portion of the recovery to the person maintaining the action. As drafted the Coastal Act does not contain one of the essential ingredients necessary to a *qui tam* actions, viz: A clear statement that the person maintaining the action is to have a share of the recovery.

State is supported in its contention that section 27426 is a *standing* provision, i.e., a provision creating only a "standing" to maintain the action, by the recent decision in *Klitgaard & Jones, Inc.* v. *San Diego Coast Regional Com.* (1975) 48 Cal.App.3d 99 [121 Cal.Rptr. 650]. The Court determined as a broad "standing" rule who was an "aggrieved" person within the meaning of section 27423 and also stated: "Sections 27425 and 27426 allow 'any person to maintain an action . . . to restrain violation of [the Act]'; and 'to maintain an action for the recovery of civil penalties provided in [the Act].' These unrestricted *standing* features show the desire for proper enforcement of the Act." (*Klitgaard, supra,* 48 Cal.App.3d 99 at p. 109; italics added.)

It is clear that it is the intent of the act to allow broad citizen participation in enforcing the provisions of the Coastal Act, and not limit "standing" to those with an actual financial stake in the outcome. (§§ 27425, 27426.)

Sections 27500 and 27501, which impose the statutory penalties, each refer to the monetary penalty as a "civil fine." This is the description given to the penalties in the ballot arguments to the voters on the measure[22] and the description by the Supreme Court in *San Diego Coast Regional Com.* v. *See The Sea, Limited, supra,* 9 Cal.3d 888.[23]

The term "fine" refers to a pecuniary punishment "imposed as a punishment only." (*People* v. *Sutter Street Ry. Co.* (1900) 129 Cal. 545, 548 [62 P. 104].) In its ordinary meaning, it "signifies a pecuniary punishment for an offense committed." (*Petersen* v. *Civil Service Board* (1924) 67 Cal.App. 70, 75 [227 P. 238].) See also 36A C.J.S., Fines,

[22]"The principal provisions of the act would: . . . Provide criminal penalties for violation of provisions relating to conflict of interest and specify civil fines for violation of other provisions of the act." (Ballot Pamp. Arguments, Gen. Election (Nov. 7, 1972) pp. 51-52.)

[23]"Persons who violate the act are subject to civil fines . . . ." (*Id.* fn. 2, at p. 890.)

section 1, pages 431-433. As the court stated in *In re Howard's Estate* (1946) 46 Ohio L.Abs. 378 [33 Ohio Ops. 510, 68 N.E.2d 820, 823]: "[A] fine is a financial punishment for committing a wrong, and which fine is for the benefit of the public. . . ."

■ While the terms "fine" and "penalty" are frequently used synonymously to refer to forms of pecuniary punishment, (*Sawyer* v. *Barbour* (1956) 142 Cal.App.2d 827, 835 [300 P.2d 187]) the use of the term "fine" imports a punitive assessment payable to the public treasury: "By the common law all fines belong to the crown, or in this country to the state as succeeding to the prerogative of the crown." (36A C.J.S., Fines, § 19, p. 460.)

Fines and penalties provided for in state statutes are required to be paid to the state in the absence of an express provision to the contrary. (Gov. Code, § 68101.) The early drafts of section 27426 provided that the plaintiff should "be entitled to receive one-third of any penalty imposed upon the defendant." This provision was dropped from the section. It is difficult to believe that by dropping the provision for awarding a fraction the drafters intended to award the whole of the penalty to the plaintiff. What remained of the section was a "standing" provision with no disposition of the funds.

Since all other statutes referred to in this case, which provide for a disposition of penalties other than to the political unit enacting the statute, expressly provide for such different disposition, and no such other or different disposition is specifically provided for in the Coastal Act, the conclusion must be that no *qui tam* action was contemplated after the deletion of the reward provision.

Neither party argues in favor of the trial court's using its discretion in dividing the civil penalties. It is clear that we must either decide that the Coastal Act intended to have plaintiffs retain the entire penalty as an inducement to bring suit or decide that in the absence of any provision to the contrary, the penalty belongs to the state as money paid as punishment for a public wrong. The intent of the act is to benefit the state and nation as a whole (§ 27001) and the penalty should go where it will benefit the public.

While we find no direct statement of California law in support of the rule that civil penalties should go to the state in the absence of express provision to the contrary, we find authority for that proposition in other

jurisdictions. (*In re Burk* (1918) 66 Ind.App. 435 [118 N.E. 540, 542]; *Brownell* v. *Old Colony R.R.* (1895) 164 Mass. 29 [41 N.E. 107, 108-109]; *Petersen* v. *J. F. Cunningham Co.* (N.D. Cal. 1896) 77 F. 211, 215-216; *Bryant* v. *Rich's Grill* (1914) 216 Mass. 344 [103 N.E. 925]; see also 36A C.J.S., Fines, § 20, p. 465; 70 C.J.S., Penalties, § 21, p. 419.)

We hold that, absent a specific provision in the Coastal Act designating any person other than the state to be a recipient of a part or all of the civil penalties recovered under the act, the statute is *not* a *qui tam* statute and all the penalty must be paid to the state.

Concerning the matter of attorneys fees and costs, plaintiffs were properly awarded same in the lower court because they were a prevailing party since they succeeded in procuring injunctive relief, irrespective of any "penalty" or civil "fine."

On this appeal, however, since the decision of the lower court as to the award of civil penalties must be reversed, the plaintiffs are not entitled to their attorneys fees and costs on appeal.

Plaintiffs cannot properly claim they should be awarded additional attorneys fees on appeal, under *Mandel* v. *Hodges* (Cal.App.), the "Good Friday" case, since here plaintiffs have resisted the award of penalties ("substantial benefits") to the state. And since this court is denying plaintiffs the right to the penalty, they are not the prevailing party on appeal and should be denied fees under section 27428.

The orders granting the motion in intervention and denying the motion to dismiss the complaint in intervention are affirmed. The judgment awarding civil penalties one-half to plaintiffs and one-half to state is reversed and the cause remanded with instructions to the trial court to enter judgment awarding the whole of the civil penalties to the interveners. Each party is ordered to bear its own costs on appeal.

Draper, P. J., and Brown (H. C.), J., concurred.