Filed 1/25/16  Vatuvei v. Citrus and Allied Essences CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TANU VATUVEI, | |
| Plaintiff and Respondent, | G051507 |
| v. | (Super. Ct. No. 30-2011-00518123) |
| CITRUS AND ALLIED ESSENCES, LTD., | O P I N I O N |
| Defendant, | |
| ACE FIRE UNDERWRITERS, | |
| Intervener and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Gail A. Andler, Judge.  Affirmed.

Bradford & Barthel and Kermit N. Sprang for Intervener and Appellant.

Lopez McHugh, Ramon Rossi Lopez, Matthew Ramon Lopez, Andrea Jo Geiovannone; Torhoerman Law and Kenneth J. Brennan for Plaintiff and Respondent.

No appearance for Defendant.

\*          \*          \*

Ace Fire Underwriters (Ace), a workers' compensation insurance carrier, appeals from the denial of its request to intervene in an action brought by its insured's employee against a third party for injuries he suffered from exposure to a hazardous chemical while at work. Ace contends that it had an absolute right to intervene in the underlying action because under Labor Code section 3853 (all further undesignated statutory references are to this code) its ex parte application, albeit filed on the eve of trial, was timely. In response, Vatuvei disputes Ace's claim and seeks dismissal of the appeal, arguing the trial court's ruling is not an appealable order. We conclude the ruling is appealable, but affirm the trial court's denial of Ace's ex parte request.

## FACTS AND PROCEDURAL BACKGROUND

In October 2011, plaintiff Tanu Vatuvei sued his employer, Mission Flavors & Fragrances, Inc. (Mission), and several companies that manufactured a food additive named diacetyl. One of the other named defendants was Citrus and Allied Essences, Ltd (Citrus). Vatuvei alleged that while employed by Mission between 2000 and 2010, he contracted a lung disease called Bronchiolitis Obliterans, purportedly triggered by exposure to diacetyl. He sought damages against Mission for fraudulent concealment and for negligence and strict liability based on theories of manufacturing defect, design defect, and failure to warn against Citrus and the other companies. Citrus filed an answer that included an affirmative defense alleging Mission caused or contributed to Vatuvei's injuries, thereby entitling Citrus "to set off any [workers'] compensation benefits" Vatuvei received.

Trial in the underlying action was originally scheduled for February 2013. Later, trial was continued to mid-July 2014. According to the superior court's Register of Actions, Vatuvei reached a settlement with Mission in April 2014.

2

In June, Ace filed an application for lien and a request for special notice in the underlying action. (§ 3856.) The application alleged Ace was Mission's workers' compensation insurer, it had previously paid nearly $124,000 in benefits on Vatuvei's behalf and, because it continued to pay benefits on the claim, the "lien will be increasing." The trial, then scheduled to begin in July, was continued to mid-August.

By late 2014, Citrus was the sole remaining defendant in the action. In August, Vatuvei's attorney sent Citrus an e-mail agreeing to withdraw the causes of action for strict liability based on manufacturing defect and design defect. The court continued trial in the underlying action one final time to Monday, January 5, 2015.

On December 12, Ace filed a motion to intervene in the Vatuvei action. Attached to the motion was a proposed complaint in intervention against Citrus that alleged causes of action for negligence and strict liability based on theories of manufacturing defect, design defect, and failure to warn. The motion was scheduled to be heard on Monday, December 29. Ace acknowledged December 29 was "the last law and motion date . . . prior to the scheduled trial date."

However, Ace withdrew the motion December 19 after learning that it had failed to serve the motion on Citrus's current attorney of record. On December 22, Ace filed an ex parte application seeking leave to intervene in the underlying action. Citrus opposed the request, arguing the application was untimely and it would cause prejudice because Ace's complaint in intervention contained causes of action on theories previously withdrawn by Vatuvei. Ace's attorney filed a supplemental declaration expressing a willingness to withdraw his manufacturing defect and design defect claims.

The trial court denied Ace's ex parte application on December 23, finding it was untimely because Ace "knew or should have known for years that this action by a worker[s'] compensation payee was pending against third parties for injuries allegedly sustained in the workplace." In addition, the court concluded that granting the application would cause prejudice, citing "the fact that the ex parte is being brought on

3

Christmas Eve for a trial that had already been continued and is set to commence the first Monday following New Year's Day, particularly in light of the causes of action being asserted by the proposed complaint in intervention which would necessitate additional discovery, trial preparation, and potentially additional witnesses, including expert witnesses." Ace petitioned this court to stay trial and allow it to intervene in the underlying action. The petition was summarily denied. Ace then filed its appeal.

Trial of the underlying action proceeded. It resulted in a jury verdict for Vatuvei that found his total damages exceeded $2.6 million, with Citrus assigned 60 percent of the fault and the remaining 40 percent assigned to Mission.

DISCUSSION

*1. Appealability of the Order Denying Ace's Ex Parte Application*

The first issue concerns Vatuvei's claim that we lack jurisdiction because it involves a ruling on an ex parte application rather than a noticed motion. The law is to the contrary.

"[A]n order denying a request for leave to file a complaint in intervention . . . has long been held appealable on the theory that the denial is a final determination of the litigation as to the party seeking to intervene." (*Bowles v. Superior Court* (1955) 44 Cal.2d 574, 582.) *Noya v. A.W. Coulter Trucking* (2006) 143 Cal.App.4th 838 applied this rule to the denial of an ex parte application to intervene. "Despite the ex parte nature of the motion in this case, plaintiffs filed a response and the trial court ruled on the merits. The order was effectively a judgment against Zurich on its right to intervene and it is appealable as such." (*Id.* at p. 841.)

Vatuvei relies on *Marken v. Santa Monica-Malibu Unified School Dist.* (2012) 202 Cal.App.4th 1250 to support his argument. That case concerned a parent's unsuccessful ex parte attempt to intervene in a teacher's action that sought to enjoin the

4

school district from disclosing documents contained in the teacher's personnel file. The Court of Appeal dismissed the appeal, concluding "it appears the trial court denied [the parent's] application . . . solely because it had been filed on an ex parte basis, rather than by noticed motion, [and] not on the merits of [the parent's] right to intervene in the action." (*Id.* at p. 1277.)

Unlike *Marken*, it is clear Ace's ex parte application was denied on the merits. The court found the application was untimely under Code of Civil Procedure section 387, noting Ace had known about Vatuvei's pending case "for years," but delayed seeking intervention until "Christmas Eve" with a trial scheduled to begin in early January. The court also held that granting Ace's last minute intervention request would prejudice the parties by further delaying the trial. Thus, this appeal is properly before us.

*2. Ace's Right to Intervene*

This case involves the means by which an employer or its workers' compensation insurer may seek reimbursement for benefits where an employee sues one or more third parties alleging they are responsible for an injury that is also covered by workers' compensation insurance. (§ 3850 et seq.) Although the statutes in this chapter of the Labor Code refer to the employer, that term is defined to include the employer's workers' compensation insurer. (§ 3850, subd. (b).)

Under this statutory scheme, where "a third party is liable in whole or in part for the employee's injuries, the Labor Code provides the employer with three basic techniques for obtaining reimbursement from the third party for workers' compensation benefits the employer has paid or become obligated to pay: the employer 'may bring an action directly against the third party (§ 3852), join as a party plaintiff or intervene in an action brought by the employee (§ 3853), or allow the employee to prosecute the action himself and subsequently apply for a first lien against the amount of the employee's

5

judgment . . . (§ 3856, subd. (b)).'" (*Associated Construction & Engineering Co. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 829, 833.)

However, to prohibit an employer profiting from its own wrong, the employer's or its insurer's benefits reimbursement right is subject to being reduced or eliminated where the employer's negligence contributed to the employee's injury. (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 599; *Witt v. Jackson* (1961) 57 Cal.2d 57, 72-73.) In this circumstance, an employer or its insurer may recover benefits only to the extent the benefits exceed the employer's share of fault for the harm done. (*DaFonte v. Up-Right, Inc., supra,* 2 Cal.4th at p. 599; *Associated Construction & Engineering Co. v. Workers' Comp. Appeals Bd., supra,* 22 Cal.3d at p. 842, fn. omitted.)

Vatuvei sued Citrus, and several other diacetyl manufacturers, alleging they were responsible for his contracting Bronchiolitis Obliterans. Citrus answered the complaint alleging as a defense that Vatuvei's injuries resulted, at least in part, from the negligence of Mission, his employer. The record reflects Ace knew about this pending action.

Ace did file a notice of lien in the action. But in *Aetna Casualty & Surety Co. v. Superior Court* (1993) 20 Cal.App.4th 1502 (*Aetna*), we held that when the issue of the employer's negligence is "introduce[d] . . . into an [employee's] action [against a third party], the mere filing of a lien is insufficient to protect an employer's claim of reimbursement," and "the employer must file a complaint in intervention." (*Id.* at p. 1507.)

In *Aetna*, the petitioner paid workers' compensation benefits to an employee for injuries suffered when she fell in a parking lot upon leaving work. The employee also sued several third parties over the fall. One defendant alleged the plaintiff's employer's negligence as an affirmative defense. The petitioner filed a lien in that action, but after the employee settled with the third parties, the trial court refused the petitioner's request to impress its lien on the settlement proceeds.

We upheld the trial court's ruling, explaining that once the employer negligence defense is raised "the complexion of the case [changes]. Until that time an employee's interests do not clash with the employer's interests in a third party action; each wants to be compensated for separate items of damage. However, once such a defense is claimed, a conflict of interest between plaintiff and the employer arises. [Citation.] Because of its alleged negligence, the amount due the employer becomes a subject of considerable dispute and the employer cannot expect the employee to argue on its behalf during any negotiations or at trial." (*Aetna, supra,* 20 Cal.App.4th at p. 1508.) Thus, "'In such a case, the employer must file a complaint in intervention in order to protect its rights.'" (*Id.* at p. 1509, quoting *O'Dell v. Freightliner Corp.* (1992) 10 Cal.App.4th 645, 654.)

Under *Aetna*, because Citrus asserted the employer-negligence defense, Ace had to seek intervention in the lawsuit to protect its reimbursement rights. Section 3853 gave Ace the right to intervene, but Code of Civil Procedure section 387, subdivision (b) obligates a court to grant intervention only "upon timely application"

Ace responds that notwithstanding Code of Civil Procedure section 387's "timely application" requirement, section 3853 allows intervention "at any time before trial on the facts." Thus, Ace claims its ex parte application, filed before trial began in the underlying action, was timely. We disagree.

Even where "a party may assert it holds [an] unconditional right to intervention, that right is not absolute. A court must initially determine whether the petition is timely." (*Lohnes v. Astron Computer Products* (2001) 94 Cal.App.4th 1150, 1153; *Sanders v. Pacific Gas & Elec. Co.* (1975) 53 Cal.App.3d 661, 668 ["it is the general rule that a right to intervene should be asserted within a *reasonable time* and that the intervener must not be guilty of an *unreasonable delay after knowledge of the suit*"].) Thus, "Timeliness is . . . one of the prerequisites for granting an application to intervene." (*Northern Cal. Psychiatric Society v. City of Berkeley* (1986) 178 Cal.App.3d 90, 109.)

7

Ace does not claim it was unaware that Citrus had alleged Mission's concurrent negligence as an affirmative defense in the underlying action. But it made no attempt to intervene in this lawsuit before the original trial date. When Ace finally did file its lien, trial was scheduled to begin in mid-July. Again, Ace did not move to intervene, nor did it try to do so before the next scheduled trial date in August. Rather, Ace waited until less than a month before the final trial date to seek intervention, setting a hearing on the motion for the last possible date before trial, and submitting a proposed complaint in intervention that alleged causes of action previously eliminated by Vatuvei. Even then, Ace failed to properly serve its motion, triggering the necessity of filing a last-minute ex parte application. Given the necessity of intervening in this action and Ace's procrastination in moving to do so, we conclude the trial court did not err in finding Ace's ex parte request to be untimely.

Ace relies on *Mar v. Sakti Internat. Corp.* (1992) 9 Cal.App.4th 1780 to argue its ex parte intervention request filed on the verge of trial was timely. In *Mar*, a bank employee was injured by masonry falling off a building. The bank's workers' compensation insurer paid the employee benefits and the bank paid him the difference between those benefits and his full salary during his recovery. The employee sued the building's owner, manager, and the construction firms making repairs to the building when the accident occurred. The insurer timely filed a complaint in intervention in the personal injury action, but the bank merely submitted a settlement statement of the amount it sought to recover. Shortly before trial, the employee settled with the defendants. At that point the bank attempted to join the workers' compensation insurer's complaint in intervention, but the trial court denied the request, finding it was untimely. Without discussing the foregoing authorities concerning the need for a timely application to intervene, the Court of Appeal reversed. It held section 3853's authorization for intervention "'at any time before trial on the facts'" was "incorporated" into Code of

8

Civil Procedure section 387 and "constitute[d] the governing rule of decision." (*Mar v. Sakti Internat. Corp., supra,* 9 Cal.App.4th at p. 1785.)

But "the question of delay . . . is a question of fact" (*In re Yokohama Specie Bank, Ltd.* (1948) 86 Cal.App.2d 545, 555), and "[w]hether in a particular case intervention should be allowed 'is best determined by a consideration of the facts of that case' [citation], and the decision is ordinarily left to the sound discretion of the trial court" (*Fireman's Fund Ins. Co. v. Gerlach* (1976) 56 Cal.App.3d 299, 302). In *Mar*, the bank's workers' compensation insurer had timely intervened and, although the underlying case settled, the insurer's action for reimbursement of the benefits it had paid on the employee's behalf remained to be tried. Also, the bank had previously informed the defendants of the amount of its reimbursement demand and there was no overlap between that sum and the benefits sought by the insurer. Further, unlike the present case, *Mar* did not involve an action where a defendant alleged employer negligence as an affirmative defense. Here, Mission's concurrent negligence was not only at issue, the determination of that affirmative defense was one of the central considerations in determining the scope of Citrus's liability to Vatuvei.

Furthermore, even if we were to follow *Mar* on the timeliness issue, we note the trial court also denied intervention because of its concern that allowing Ace to join the action on the eve of trial would cause further delay. Delay of trial is another ground for denying a request to intervene in an action. (*Willett v. Jordan* (1934) 1 Cal.2d 461, 465.) "It is also the general rule that an intervention will not be allowed when it would retard the principal suit, or require a reopening of the case for further evidence, or delay the trial of the action, or change the position of the original parties." (*Sanders v. Pacific Gas & Elec. Co., supra,* 53 Cal.App.3d at p. 669.) Standing alone, the latter ground supports the trial court's ruling. Ace's failure to challenge this part of the trial court's ruling supports a conclusion that it has forfeited the issue. (*Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125 ["an appellant's failure to

9

discuss an issue in its opening brief forfeits the issue on appeal"]; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 701, pp. 769-771.)

Consequently, we conclude the trial court did not abuse its discretion by denying Ace's ex parte application to intervene in the underlying action.


DISPOSITION


The order is affirmed. Respondent shall recover his costs on appeal.




RYLAARSDAM, ACTING P. J.

WE CONCUR:


ARONSON, J.


IKOLA, J.